The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Samuel Albert ROJAS, Defendant–
Appellant.

No. 05CA2058.

Colorado Court of Appeals,
Div. VI.

March 6, 2008.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Samuel Albert Rojas, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child. We affirm.

According to the prosecution's evidence at trial, defendant sexually assaulted nine-year-old E.B. while he was staying at her home. Defendant testified that he had never "touched E.B. in an inappropriate way," and he recounted instances in which she had attempted to initiate sexual contact with him.

## I.

Defendant contends that the trial court erred in admitting E.B.'s hearsay statements at trial because the statements lacked sufficient safeguards of reliability. We disagree.

Absent an exception, hearsay is not admissible. CRE 802. Section 13–25–129, C.R.S. 2007, creates a hearsay exception for statements made by a child victim of a sexual offense. Where, as here, the child testifies at trial, the child's hearsay statement is admissible if the court finds "that the time, content, and circumstances of the statement provide sufficient safeguards of reliability." § 13–25–129(1)(a), C.R.S.2007.

In determining the admissibility of child hearsay, the trial court may consider the following factors:

(1) Whether the statement was made spontaneously;

(2) whether the statement was made while the child was still upset or in pain from the alleged abuse;

(3) whether the language of the statement was likely to have been used by a child the age of the declarant;

(4) whether the allegation was made in response to a leading question;

(5) whether either the child or the hearsay witness had any bias against the defendant or any motive for lying;

(6) whether any other event occurred between the time of the abuse and the time of the statement which could account for the contents of the statement;

(7) whether more than one person heard the statement; and

(8) the general character of the child.

*People v. District Court*, 776 P.2d 1083, 1089–90 (Colo.1989); *People v. Underwood*, 53 P.3d 765, 768 (Colo.App.2002). These factors guide the trial court's analysis, but they are not mandatory. *People v. District Court*, 776 P.2d at 1090. Failure to establish all factors favoring admission does not foreclose the admissibility of a statement. *See id.*

Contrary to defendant's argument, where the child testifies at trial, *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not modify the analysis set forth above or warrant treating the issue as one implicating the defendant's confrontation rights. *See People v. Argomaniz–Ramirez*, 102 P.3d 1015, 1018 (Colo.2004) ("*Crawford* does not affect the analysis for admission of out-of-court statements where the declarant testifies at trial."); *see also People v. Dill*, 904 P.2d 1367, 1374 (Colo.App. 1995) ("[T]he victim testified at trial, further reducing the possibility of a violation of defendant's right to confront an adverse witness."), *aff'd*, 927 P.2d 1315 (Colo.1996).

 The trial court's decision to admit child hearsay will not be overturned absent an abuse of discretion. *Underwood*, 53 P.3d at 768. Although the trial court should make specific findings on which factors establish "sufficient safeguards of reliability," its decision to admit the child's hearsay statements will be affirmed even absent such findings if the record shows an adequate factual basis to support the trial court's determination. *People v. Bowers*, 801 P.2d 511, 521–22 (Colo. 1990).

Prior to trial here, the prosecution moved to admit hearsay statements made by E.B. to her mother and to an investigating police officer. At the hearing on the motion, the mother testified that her brother, E.B.'s uncle, had told her that she needed to talk to E.B. She then took E.B. into her room and asked: "[H]as something been going on that I need to know about?" E.B. responded in the affirmative. Her mother asked, "What?" E.B. said that defendant had been touching her "on her private parts," and that he "put his finger up inside me and he licked me on my vagina." E.B. told her mother that the touching had occurred the previous night, and that "it also happened a couple of times in our old apartment." The mother testified that E.B. "looked calm and just normal" at first, but that, subsequently, E.B. "started crying a little bit and ... her voice got a little softer." The mother then called the police.

The investigating officer testified that he spoke with E.B. after talking with her mother and her uncle. He said that E.B.'s demeanor was normal and that she was not crying. The officer began the conversation by asking E.B.: "Can you tell me what happened?" In response, E.B. said that defendant had been "doing bad things." The officer asked, "What is that?" E.B. responded that defendant "put his finger in my vagina, and his penis up in my butt," and that this had been going on for three months. The officer did not ask her any more questions.

At the conclusion of the hearing, defendant objected to admission of the statements, arguing that they were unreliable. The trial court concluded that the "time, content and circumstances" of the statements provided sufficient safeguards of reliability. The court noted that the statement to the mother was in response to a nonleading question, but it did not otherwise make specific findings on the relevant factors set forth above.

Despite the lack of findings, our review of the record satisfies us that there was an adequate factual basis developed at the motions hearing to support the trial court's admission of the statements. *See Bowers*, 801 P.2d at 521–22. E.B.'s statements were not

spontaneous, but they were made in response to nonleading, open-ended questions. E.B. made the statements shortly after the incident leading to the sexual assault conviction took place. Although her demeanor at the time of the statements was described by both witnesses as normal, the mother also testified that E.B. started crying when she recounted the incident. E.B. described the incident in age-appropriate language, she made substantially similar statements to more than one person, and there was no evidence presented at the motions hearing to suggest that she had any bias against defendant or to call into question her general character.

On appeal, defendant argues that the sixth factor set forth above—namely, whether an intervening event could account for the contents of the statement—supported exclusion of the statements. He cites trial testimony concerning a conversation E.B. had with her uncle before she told her mother and the officer about the abuse. However, defendant did not present evidence of, or argument regarding, that conversation at the pretrial hearing, and he thus cannot now complain of the trial court's failure to take it into account in deciding whether to admit the evidence. *See Bowers,* 801 P.2d at 521–22.

In any event, the fact that not all the relevant factors support admissibility does not require exclusion of the statements. *See People v. District Court,* 776 P.2d at 1090. Further, the conversation with the uncle, as well as inconsistencies in E.B.'s various statements, could be considered by the jury in determining the weight to be given to E.B.'s testimony. *See People v. Dash,* 104 P.3d 286, 289 (Colo.App.2004). Indeed, during closing argument, defense counsel directed the jury's consideration to E.B.'s conversation with her uncle, as well as to inconsistencies in her testimony, and the jury found that the prosecution had not proved that the sexual assault was committed as part of a pattern of sexual abuse.

Thus, the trial court did not abuse its discretion in admitting the hearsay statements.

## II.

Defendant also challenges the trial court's admission of expert testimony from two witnesses. We find no grounds for reversal.

■ Trial courts have broad discretion in determining the admissibility of expert testimony pursuant to CRE 702, and the exercise of that discretion will not be overturned on appeal in the absence of manifest error. *Lanari v. People,* 827 P.2d 495, 502 (Colo.1992); *People v. Jenkins,* 83 P.3d 1122, 1126 (Colo. App.2003).

### A.

■ Defendant contends the trial court erred in allowing a prosecution expert witness to testify that she had "diagnosed E.B. as a victim of sexual abuse." We conclude that defendant mischaracterizes the witness's testimony, that the trial court did not abuse its discretion in deeming the witness qualified to testify as an expert, and that any error in overruling the defense objection to testimony that E.B. was "molested" was rendered harmless by the witness's immediate clarification of that statement.

■■ Before allowing a witness to render an opinion as an expert, the trial court must ensure that the witness is qualified to opine on the matter as to which his or her testimony is offered. Given the superior opportunity of the trial judge to gauge both the competence of the expert and the extent to which the expert's opinion would be helpful to the jury, we afford deference to the trial court's decision to qualify a witness as an expert. *See People v. Ramirez,* 155 P.3d 371, 380–81 (Colo.2007).

Under CRE 702, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." *People v. Fasy,* 829 P.2d 1314, 1316 (Colo.1992); *see Ramirez,* 155 P.3d at 380–81 (pediatric nurse practitioner was qualified to testify as expert concerning her examination of sexual assault victim); *People v. Harris,* 43 P.3d 221, 223 n. 3 (Colo.2002) (nurse was qualified as expert in sexual assault examinations on basis of her training as sexual assault nurse examiner and her experience in examining more than fifty sexual assault victims).

Here, the witness testified that she was a pediatrics physician's assistant and senior instructor in pediatrics at the University of Colorado and that she worked at Children's Hospital on the child protection team. She had received extensive training in examining children who were reported to have been sexually abused. The witness had been licensed as a physician's assistant for thirty-three years, had worked with the child protection team for fourteen years, had examined more than a thousand children, had made diagnoses and assessments in these cases, and had been qualified more than fifty times as an expert in pediatrics and sexual abuse.

Although defendant brought out on voir dire that the witness did not "have a specific certificate in diagnosing sexual abuse," the trial court nevertheless allowed the witness to testify as an expert over defense objection. Given the witness's extensive experience, knowledge, and training, it was well within the trial court's discretion to allow her to testify as an expert.

■ Contrary to defendant's characterization of this issue on appeal, the witness did not testify that she had "diagnosed" E.B. as a victim of sexual abuse. During the course of explaining her qualifications, she referred to having made such diagnoses in other cases. She explained how E.B.'s statements to her, as well as the physical findings made during her examination of E.B., were consistent with the statements of, and physical findings concerning, children who had been sexually abused. Such testimony was not improper. *See Jenkins*, 83 P.3d at 1127 (while expert may not give opinion testimony as to whether a witness is telling the truth on a specific occasion, expert may testify concerning whether the victim's behavior or demeanor is consistent with that of typical victims of abuse); *see also Fasy*, 829 P.2d at 1318 (no error to allow expert testimony in sexual assault case where expert did not make any statement relating to truthfulness or untruthfulness on a specific occasion, but, rather, compared characteristics of post-traumatic stress disorder with victim's characteristics and concluded that victim was suffering from the disorder).

Defendant nevertheless claims that the witness "diagnosed" E.B., and effectively opined on the truthfulness of her allegations, when she used the word "molested" in the following colloquy:

Q [Prosecutor]: I would like to direct your attention back to [E.B.]. Do you remember meeting [E.B.]?

A: Yes, I do.

Q: Okay. And do you remember where you met [E.B.] at?

A: I met her at the Children's Hospital.

Q: Why did you meet her there?

A: She had come in because she'd been molested.

[Defense]: Objection, Your Honor, that gives an opinion. That's beyond the scope of her expertise that she had been molested.

Court: Objection overruled.

Q: Was it based on the report that she'd made to law enforcement and to her mother?

A: Yes, she came in with a concern of sexual abuse.

Although the trial court could properly have sustained the objection, any error in its failure to do so was rendered harmless by the witness's immediate clarification that E.B. had come in based on a report of, and concern about, sexual abuse.

**B.**

■ Nor are we persuaded by defendant's contention that the trial court erred in admitting "confusing and scientifically inconclusive DNA evidence," in violation of *People v. Shreck*, 22 P.3d 68 (Colo.2001), and CRE 403.

In *Shreck*, which also involved the admissibility of DNA evidence, the supreme court held that CRE 702 governs the admissibility of such evidence, and that, under that standard, "the focus of a trial court's inquiry should be on the reliability and relevance of the scientific evidence." 22 P.3d at 78. Such inquiry requires a determination as to (1) the reliability of the scientific principles; (2) the

qualifications of the witness; and (3) the usefulness of the testimony to the jury. The trial court is also to apply its discretionary authority under CRE 403 to ensure that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* at 78–79.

In this case, a Colorado Bureau of Investigation (CBI) test of penile swabs taken from defendant showed that DNA from two people was present on the swabs. While 99.6% of the population could be excluded as a contributor to the minor component of the mixture, E.B. could not be excluded. Defendant filed a pretrial motion to exclude the evidence, arguing that, because the witness would not be able to say to a reasonable degree of scientific certainty that E.B. contributed to the DNA mixture, the testimony would not be helpful to the jury and any probative value it might have would be outweighed by the danger of misleading or confusing the jury. The trial court ruled that the evidence would be admitted but that the defense would be allowed wide latitude to cross-examine the witness regarding the significance of the evidence.

At trial, an agent who worked in the CBI's crime laboratory was qualified without objection as an expert in the fields of forensic serology and DNA analysis. The agent testified at considerable length regarding methods used for identifying differences between people by typing their DNA and regarding the ways in which DNA samples are collected and tested. She also explained how the CBI applied statistics to determine the likelihood of any person being the source of the particular DNA profile at issue.

The agent then testified that the CBI had obtained swabs from E.B. and two penile swabs from defendant, and she explained how the swabs were handled in the laboratory. After reviewing in detail the results of the testing, the agent testified that defendant could not be excluded as the source of the major component of the swabs taken from him. Further, E.B. could not "be excluded as a contributor to the minor component and 99.6 percent of the population can be excluded." On cross-examination, defendant elicited testimony from the agent that E.B. could

not definitely be included among the possible contributors to the DNA mixture, and that the one in approximately 250 people who could potentially be included amounted to a large number of people when considered in relation to the entire population.

We do not agree with defendant's contention on appeal that, because E.B. could not definitely be identified as a contributor of the DNA in the mixture, the testimony could not be "useful" to the jury, as required under *Shreck.* Nor do we agree that it should have been excluded under CRE 403 because of its limited probative value and danger of unfair prejudice. The testimony was relevant, in that it showed it was more probable than not that E.B. contributed to the DNA. That fact was useful to the jury in deciding whether defendant had had sexual contact with E.B. It was within the trial court's discretion to conclude that the probative value of the evidence was not significantly outweighed by the danger of any of the countervailing considerations set forth in CRE 403.

Our conclusion is consistent with that of courts in other jurisdictions that have upheld the admission of DNA mixture evidence and of testimony regarding the statistical probability that the DNA was that of a specific individual. *See, e.g., United States v. Mitchell,* 502 F.3d 931, 970 (9th Cir.2007) (trial court did not err in admitting evidence that defendant could not be excluded as contributor to sample containing mixture of three persons' DNA); *Brown v. State,* — So.2d —, —, 2007 WL 1865383 (Ala. No. CR–04–0293, June 29, 2007) (fact that DNA sample was mixed, i.e., that it contained the blood of at least two individuals, would not affect admissibility of population-frequency statistics related to sample); *People v. Smith,* 107 Cal.App.4th 646, 132 Cal.Rptr.2d 230, 249–50 (2003) (DNA mixture evidence was properly admitted); *Roberts v. United States,* 916 A.2d 922, 932 (D.C.2007) (DNA expert from FBI forensics laboratory could testify to probability that someone other than defendant had provided the DNA matching defendant's profile; questions about reliability of interpreting mixed samples went to weight, not admissibility of evidence); *Commonwealth v. O'Laughlin,* 446 Mass. 188, 843

N.E.2d 617, 633 (2006) (rejecting argument that DNA evidence lacked probative value and was inadmissible because it demonstrated only that likelihood that any individual contributed to DNA mixture was one in two); *State v. Hannon,* 703 N.W.2d 498, 508 (Minn. 2005) (holding that DNA mixture evidence was admissible and citing "DNA exception to the general prohibition against the use of statistical probability evidence in a criminal case"); *State v. Edelman,* 593 N.W.2d 419, 424–25 (S.D.1999) (testimony that defendant · was not excluded as source of DNA would be helpful to jury); *cf. State v. Mason,* 110 P.3d 245, 252–53 (Wash.Ct.App.) (upholding, in unpublished text, exclusion of opinion testimony that thirty to eighty percent of population could not be excluded from mixed DNA sample, where defense presented no scientific confirmation of its statistics), *republished,* 127 Wash.App. 554, 126 P.3d 34 (2005) (omitting discussion of DNA evidence), *aff'd on other grounds,* 160 Wash.2d 910, 162 P.3d 396 (2007).

Defendant's reliance on *People v. Wilkerson,* 114 P.3d 874 (Colo.2005), in support of a contrary conclusion is misplaced. In that case, the supreme court held that it was not an abuse of discretion to exclude the defendant's proffered expert testimony that it was "more likely than not" that the defendant had shot the victim accidentally. *Id.* at 876. The court noted that, even when a general area of scientific knowledge has been determined to be reliable, test results or comparisons should not be admitted where there is no evidence demonstrating the reliability of the method of reaching statistical or numerical conclusions relating to the underlying evidence. In the case before it, the defendant's proffered expert opinion on the likelihood of a particular occurrence was "virtually without any support in the record whatsoever, much less support sufficient to demonstrate the reliability of a numeric calculation of the probability that the shooting in this case was accidental." *Id.* at 877. Such an opinion was entirely unlike that given by the CBI agent here, who explained in great detail the method of arriving at, and the significance of, the statistics to which she testified.

### III.

Finally, defendant contends that the cumulative effect of the prosecutor's improper comments in closing argument deprived him of a fair trial. We disagree.

Closing argument must be confined to the evidence admitted at trial, the inferences that can reasonably and fairly be drawn from it, and the instructions of law submitted to the jury. *People v. DeHerrera,* 697 P.2d 734, 743 (Colo.1985). It is improper for a prosecutor to use arguments calculated to inflame the passions and prejudices of the jury, *People v. Holloway,* 973 P.2d 721, 724 (Colo.App.1998); to denigrate defense counsel, *People v. Williams,* 89 P.3d 492, 494 (Colo.App.2003); to accuse the defense of engaging in "character assassination" for attacking the credibility of prosecution witnesses, *People v. Sandoval,* 710 P.2d 1159, 1163 (Colo.App.1985), *rev'd on other grounds,* 733 P.2d 319 (Colo.1987); or to assert a personal opinion concerning the truthfulness of a witness, *People v. Allee,* 77 P.3d 831, 835 (Colo.App.2003).

However, claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. Because such evaluation is best done by the trial court, that court's rulings on the scope of final arguments will not be disturbed on appeal absent a gross abuse of discretion resulting in prejudice and a denial of justice. *Holloway,* 973 P.2d at 724. Further, in assessing a claim of improper argument, a reviewing court must take into account "defense counsel's opening salvo." *People v. Vialpando,* 804 P.2d 219, 225 (Colo.App.1990) (quoting *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987)).

When a defendant does not object to the statement at trial, reversal is required only if the challenged comment rises to the level of plain error. Prosecutorial misconduct must be flagrant, or glaringly or tremendously improper, before it can be classified as plain error; and, even then, reversal is warranted only where there is a substantial likelihood that the misconduct affected the verdict or deprived the defendant of a

fair and impartial trial. *Vialpando,* 804 P.2d at 224.

### A.

 Defendant first cites comments that, he claims, improperly denigrated the defense and amounted to "character assassination" of E.B. We conclude the comments do not warrant reversal.

During his initial opening argument, the prosecutor referred to defense efforts to turn E.B. into the villain and defendant into the victim, and to paint E.B. as "a little tramp." Defendant did not object to these comments. Particularly when they are considered in light of defendant's testimony suggesting that it was E.B. who had initiated any inappropriate sexual contacts, they did not rise to the level of plain error.

In her closing argument, defense counsel attacked E.B.'s testimony, characterizing her as an "actress" who was continually changing her story and making things up. She also referred to evidence of E.B.'s inappropriate behavior. Defense counsel characterized E.B. as a "troubled girl" who was testing boundaries and acting inappropriately.

In rebuttal closing, the prosecutor stated that E.B. had been put on trial by defense counsel, the prosecution, and defendant. Defense counsel objected, pointing out that defendant was the one on trial, and the court sustained the objection. The prosecutor then stated that both defendant and defense counsel had "smeared" and "smashed" E.B.'s character and that "what they accuse her of is shameful." The trial court again sustained defense counsel's objection, and it told the jury that the remarks would be stricken.

We conclude that the prosecutor's remarks in rebuttal closing did not rise to the level of denigration of the defense or "character assassination" when viewed in the light of defense counsel's closing. To the extent the remarks can be viewed as going beyond the bounds of proper rebuttal argument, the trial court's actions in sustaining the objections and striking the latter remarks were sufficient to cure any prejudice to defendant.

### B.

Defendant also complains of two comments that, in his view, amount to improper vouching for E.B.'s credibility and an improper statement of the prosecutor's personal belief. He cites the prosecutor's statements during rebuttal closing that (1) the jury should remember what the evidence was, and if it did, "I believe . . . that there's only one conclusion"; and (2) E.B. had "told the truth." Defendant's objection to the first comment was overruled, and defendant did not object to the latter comment.

These comments did not warrant reversal. The brief statement that the prosecutor "believed" there was only one conclusion from the evidence did not suggest that the prosecutor had "formed an opinion of guilt based on evidence not presented at trial," or that his belief would "carry the imprimatur of the government so as to induce the jury to trust the prosecutor's judgment rather than its own view of the evidence." *Allee,* 77 P.3d at 836. Rather, the prosecutor was clearly asking the jury to reach the only conclusion that, in his view, was warranted in light of the evidence presented. Similarly, the latter comment was not an expression of personal opinion but, rather, was part of the prosecutor's summary of evidence that supported an inference that E.B. was telling the truth.

### C.

Finally, because the remarks of which defendant complains did not, even considered cumulatively, substantially prejudice defendant's right to a fair trial, he is not entitled to reversal on a theory of cumulative error. *See People v. Roy,* 723 P.2d 1345, 1349 (Colo. 1986); *People v. Welsh,* 176 P.3d 781, —— (Colo.App.2007).

The judgment is affirmed.

Judge DAILEY and Judge FURMAN concur.