Opinion by Judge VOGT.*
¶ 1 Defendant, James Robert Stackhouse, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child and sexual assault on a child-position of trust. He also appeals the sentence imposed. We affirm the judgment *711 and sentence and remand for correction of the mittimus.
I. Background
¶ 2 M.A., the daughter of defendant's girlfriend, was born in 2003. Defendant lived with M.A. and her family from 2005 to 2008 and often cared for M.A. while her mother was at work.
¶ 3 According to the testimony at trial, on one occasion in 2007, M.A.'s preschool teacher noticed redness and swelling while changing M.A.'s diaper. M.A. screamed when she was wiped and said that "Daddy" had touched her "no-no." In 2008, M.A. and her brothers were removed from their mother's home and went to live with the brothers' aunt. While giving M.A. a bath, the aunt observed M.A. putting bath toys in her vagina. When she asked M.A. whether anyone had ever "touched her in a spot that they shouldn't have touched," M.A. responded that defendant had touched her with his fingers, causing bleeding. The child subsequently told a forensic interviewer that defendant touched her "no-no," making it bleed. When asked what her "no-no" was, M.A. pointed to her vagina.
¶ 4 M.A.'s foster father testified that the child told him defendant had touched her private parts with his "pee-pee" and made her lick his "pee-pee." Additionally, when M.A. overheard the foster father talking on the telephone with a person named James, she became upset and said, "Dad, don't take me to James.... I am not a bad girl. Please don't take me back to James. I will be a good girl."
¶ 5 Defendant was charged with sexual assault on a child, sexual assault on a child by a person in a position of trust, and sexual assault on a child as a part of a pattern of sexual abuse. A jury acquitted him of the pattern of abuse charge but found him guilty of the other charges. He was sentenced to an indeterminate prison term of ten years to life.
II. Public Trial
¶ 6 On the first day of trial, the trial court asked members of the public to leave the courtroom while the jury was being selected. The court stated that, while the trial itself would be public, there was not enough space to seat the fifty potential jurors and still accommodate observers. After the jury was seated, the court continued, there would no longer be a danger of having family members and others "comingle" with the jurors.
¶ 7 Defendant did not object to this course of action. Nevertheless, relying on Presley v. Georgia, 558 U.S. 209, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010), he contends on appeal that the exclusion of the public during jury selection constituted structural error entitling him to automatic reversal. We disagree.
A. Governing Law
¶ 8 The right to a public trial, guaranteed by both the United States and Colorado Constitutions, U.S. Const. amends. VI, XIV ; Colo. Const. art. II, § 16, extends to the jury selection process. Presley, 558 U.S. at 213-14, 130 S.Ct. at 724. However, the right is not absolute, and it may in some circumstances give way to other rights or interests. Id.; see also Anderson v. People, 176 Colo. 224, 226, 490 P.2d 47, 48 (1971) (closing courtroom during voir dire because of limited space and concerns about keeping prospective jurors away from relatives and witnesses was "entirely proper").
¶ 9 While the denial of a public trial over the defendant's objection is structural error requiring reversal even absent proof of specific prejudice, see Waller v. Georgia, 467 U.S. 39, 49-50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), not every exclusion of the public is a structural defect. See People v. Whitman, 205 P.3d 371, 379 (Colo.App.2007) ; People v. Thomas, 832 P.2d 990, 993 (Colo.App.1991) ; People v. Angel, 790 P.2d 844, 846-47 (Colo.App.1989). Further, even structural errors are subject to the doctrine of waiver. See Anderson, 176 Colo. at 227, 490 P.2d at 48 (claimed violation of right to public trial was waived where defendant made no contemporaneous objection to exclusion of public during voir dire); see also Robinson v. State, 410 Md. 91, 976 A.2d 1072, 1083 (2009) (collecting cases and holding, "[c]onsistent with the vast majority of the courts that have spoken on *712 the subject ... that a claimed violation of the right to a public trial must be preserved for appellate review by a timely objection at trial, notwithstanding that the allegation implicates structural error").
B. Analysis
¶ 10 Under these authorities, defendant waived his public trial claim by failing to object in the trial court to the closure of the courtroom during jury selection.
¶ 11 We do not agree with defendant that Presley requires a different result. In Presley, the Supreme Court held that trial courts must consider reasonable alternatives to closure before excluding the public from voir dire, even when such alternatives are not offered by the parties. 558 U.S. at 213-14, 130 S.Ct. at 724. However, unlike here, the defendant in Presley made a contemporaneous objection to the proposed closure, requested "some accommodation," and moved for a new trial based on exclusion of the public from voir dire. Id. at 209-11, 130 S.Ct. at 722. There is nothing in the Supreme Court's Presley opinion to suggest that it was departing from its prior cases holding that even fundamental rights such as the right to a public trial can be waived by a failure to object. See Peretz v. United States, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (stating that "[t]he most basic rights of criminal defendants are ... subject to waiver," and citing Levine v. United States, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960), for the proposition that "failure to object to closing of courtroom is waiver of right to public trial"); see also Robinson, 976 A.2d at 1083 ; State v. Bowen, 157 Wash.App. 821, 239 P.3d 1114, 1118 (2010) (observing that Presley does not "control circumstances where, as here, the defendant did not object to the closure [of the courtroom] at trial," but concluding that reversal was required under applicable Washington precedent).
C. Plain Error
¶ 12 In his reply brief, defendant argues for the first time that, if his structural error argument is deemed waived, he is nevertheless entitled to reversal because closure of the courtroom constituted plain error. We disagree. Even if we assume that this argument is properly before us and that the trial court's procedure was flawed, we perceive no basis for concluding that the error, if any, so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. See People v. Miller, 113 P.3d 743, 750 (Colo.2005).
III. M.A.'s Statements
¶ 13 Defendant challenges the admission of M.A.'s statements through her own testimony and through the testimony of other witnesses. We perceive no grounds for reversal.
A. Competency
¶ 14 Defendant first contends that the trial court erred in allowing M.A. to testify even though she was not competent to do so. We disagree.
¶ 15 We review the trial court's competency determination for abuse of discretion. People v. Wittrein, 221 P.3d 1076, 1079 (Colo.2009).
¶ 16 Under section 13-90-106(1)(b)(II), C.R.S.2012, a child may testify in a criminal sexual abuse proceeding "when the child is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." A child may be judged competent to testify if, for example, she knows what grade she is in, knows the defendant's name, and is able to observe and relate facts accurately. See People v. Vialpando, 804 P.2d 219, 224 (Colo.App.1990) (seven-year-old witness in sexual assault prosecution was competent to testify; she knew defendant by his first name, knew her grade in school, and told court she would tell the truth after acknowledging difference between truth and lie).
¶ 17 Here, the trial court held a competency hearing before trial. When questioned by the court, M.A. knew her name and that she was six years old. She was able to partially spell her last name. She testified that she knew the difference between the truth and a lie, and she was able to answer *713 correctly when the court asked three questions requiring her to identify whether something was the truth or a lie. M.A. stated that she knew what a promise was, and she promised to tell the truth. When defense counsel asked M.A. if she thought she could answer questions "about things that happened before today," even if the courtroom was full of people, M.A. responded that she could.
¶ 18 After engaging in a colloquy with the child that was similar to that described in Wittrein, the court concluded that, under the statutory standard, M.A. was competent to testify. It found that she understood the nature of the oath, the difference between truth and a lie, and the importance of being truthful. Based on its observations of the child's demeanor and responses, the court further found that M.A. was able to describe, in language appropriate for a six-year-old, the events respecting which she was being examined.
¶ 19 Permitting M.A. to testify was not an abuse of discretion. The trial court assessed the child's competency under the correct standard, and its findings are supported by the record. We also note that, at trial, M.A. was able to relate, in age-appropriate terms, the events about which she was being examined, and she was able to explain what she meant by those terms when asked to do so.
B. Hearsay
¶ 20 Defendant next argues that the trial court erred in admitting M.A.'s hearsay statements through other witnesses. He contends that the trial court failed to make findings regarding the reliability of the hearsay, and that the child's inability to remember some of the statements precluded effective cross-examination, thereby violating his confrontation, due process, and fair trial rights. Because defendant did not raise any of these objections at trial, we review for plain error. We find none.
1. Reliability
¶ 21 When a child sexual assault victim testifies at trial, the child's hearsay statement is admissible if the court finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. People v. Rojas, 181 P.3d 1216, 1218 (Colo.App.2008). In determining the admissibility of child hearsay, the court may consider factors such as whether the statement was spontaneous, whether it was made while the child was still upset or in pain, whether the language was likely to have been used by a child of the victim's age, whether more than one person heard the statement, and whether factors such as bias against the defendant, leading questions, or intervening events would suggest that the statement was unreliable. Id. at 1218-19 ; see also People v. Dist. Court, 776 P.2d 1083, 1089-90 (Colo.1989).
¶ 22 Although the trial court should make specific findings on which factors establish reliability, its decision to admit the child's hearsay statements will be affirmed even absent such findings if the record shows an adequate factual basis to support the court's determination. Rojas, 181 P.3d at 1219.
¶ 23 Here, the prosecution indicated that M.A. would testify at trial and it would accordingly introduce M.A.'s statements as nonhearsay pursuant to CRE 801(d). The trial court thus did not make specific findings regarding the reliability of the statements. Nevertheless, even if we treat the statements as hearsay, we are satisfied that the circumstances under which they were made, in combination with the similarity of the statements, provide sufficient indicia of reliability to support their admission.
¶ 24 The statement to the preschool teacher was spontaneous and made while M.A. was upset and in pain after being touched. Similarly, M.A.'s statement to her foster father when she overheard the telephone conversation was a spontaneous outburst reflecting her fear of being returned to defendant. Her initial statement to the forensic interviewer was elicited without a leading question and was consistent with her earlier declarations. Although the statement to the aunt was in response to a leading question, it was consistent with M.A.'s previous statement to the teacher, and there is no indication that the question was motivated by bias *714 against defendant rather than being posed in response to what the aunt had observed. Notably, all of the statements were made in age-appropriate language and there is nothing in the record to suggest that they were influenced by intervening events or were the product of the declarant's bias against defendant.
¶ 25 We thus conclude that the record contains an adequate factual basis to establish the reliability of the statements. We also note that the jury was properly instructed as to how it could consider the testimony, and that, as in Rojas, defense counsel directed the jurors' attention to inconsistencies in the testimony, which may have led to their verdict acquitting defendant of the pattern charge.
2. M.A.'s Inability to Remember
¶ 26 At trial, M.A. could not remember the statements she made about defendant to any of the witnesses other than her foster father. Defendant contends that this prevented him from cross-examining her, thereby rendering the statements inadmissible under CRE 801(d) and violating his right of confrontation. We have already concluded that the statements were admissible as hearsay regardless of whether the requirements of CRE 801(d) were satisfied, and we discern no violation of defendant's constitutional rights.
¶ 27 "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Crawford v. Washington, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In addition, when a witness takes the stand and is available for cross-examination, prior out-of-court statements may be admitted even if the witness does not remember making them. People v. Argomaniz-Ramirez, 102 P.3d 1015, 1017 (Colo.2004) ; see also United States v. Owens, 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (introduction of victim's out-of-court identification of assailant does not violate Confrontation Clause when victim testifies while suffering from memory loss, because "traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness'[s] demeanor satisfy the constitutional requirements").
¶ 28 Here, M.A. testified at trial regarding the same abuse that was described by the other witnesses. She was available for cross-examination and, notwithstanding her inability to remember having told others about the incidents, defendant in fact conducted an effective cross-examination of her. Defendant's rights to confrontation, to due process, and to a fair trial were not violated.
¶ 29 In sum, admission of M.A.'s testimony and the testimony of the other witnesses did not, even if considered cumulatively, violate defendant's constitutional rights or constitute an abuse of discretion, much less plain error.
IV. Correction of the Mittimus
¶ 30 At sentencing, the trial court found that defendant was not a sexually violent predator. The mittimus states, "Sex Offender Status: No SVP Findng Must Reg as SXOF." Defendant argues that this language could be read to indicate that the court did not make an SVP finding. We agree that the language is ambiguous, and therefore remand with directions to amend the mittimus to state: "Defendant found not to be SVP; must register as sex offender."
V. SOLSA
¶ 31 Defendant contends that the Colorado Sex Offender Lifetime Supervision Act (SOLSA), §§ 18-1.3-1001 to - 1012, C.R.S.2012, is unconstitutional. However, we decline to depart from the decisions of several divisions of this court that have found SOLSA to be constitutional. See People v. Collins, 250 P.3d 668, 679 (Colo.App.2010) (collecting cases).
¶ 32 The judgment and sentence are affirmed, and the case is remanded for correction of the mittimus.
Judge LICHTENSTEIN concurs.
Judge GABRIEL specially concurs.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2012.