23CA0855 Peo v Mills 03-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0855
Adams County District Court No. 22CR766
Honorable Donald S. Quick, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher Richard Mills,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE LUM
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

---

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mackenzie R. Shields, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Christopher Richard Mills, appeals the judgment of conviction entered after a jury found him guilty of two counts of sexual assault on a child by one in a position of trust as a pattern of abuse.  We affirm.

## I.    Background

¶ 2    Mills's stepdaughter, C.V., alleged that Mills had sexually assaulted her on two occasions in the family home.  On one occasion, Mills put his hands up her shirt and down her pants when they were sitting together in the kitchen.  On the other occasion, Mills took C.V. to his bedroom, where he licked her vagina and touched her buttocks.  A year after the incidents, C.V. disclosed the abuse to her mother and said that Mills had begun making hand gestures indicating that he wanted to sexually assault her again.

¶ 3    Mills was charged with sexual assault on a child by one in a position of trust as a pattern of abuse and two aggravated sex offense sentence enhancers.  A jury convicted him as charged, and the trial court sentenced him to twenty-five years to life in the custody of the Department of Corrections.

## II.    Child Hearsay Statements

¶ 4    Mills first contends that the trial court erred by denying his request to call C.V. as a witness in a pretrial hearing regarding the admissibility of her forensic interview.[1]  He also argues that even if the court properly excluded C.V.'s testimony, its reliability findings were erroneous.  We disagree.

### A.    Additional Background

¶ 5    Before trial, the prosecution filed notice of its intent to introduce child hearsay statements — C.V.'s forensic interview — at trial under section 13-25-129, C.R.S. 2025.  During a pretrial conference, the prosecutor asked the court to make findings as to the reliability of C.V.'s interview statements based on the video of the interview.  Defense counsel objected and requested that the court hold a separate hearing to question C.V. about certain reliability factors.  The court concluded that the video reflected

---

[1] During the pretrial hearing, defense counsel requested a separate hearing with testimony from C.V. and "with the forensic interviewer potentially."  To the extent that Mills raises an argument challenging the exclusion of the forensic interviewer on appeal, this argument isn't developed, and we decline to address it.  *See People v. Liggett*, 2021 COA 51, ¶ 53 (noting that appellate courts don't address undeveloped arguments), *aff'd*, 2023 CO 22.

"sufficient indicia" of reliability (for example, C.V.'s age-appropriate language, the interviewer's open-ended questions, and the lack of apparent bias in the interview) to allow the hearsay to be introduced at the trial, particularly because C.V. would be testifying subject to cross-examination. Accordingly, the court denied defense counsel's request to question C.V.

¶ 6     At trial, the forensic interview was played for the jury with certain redactions requested by defense counsel.

### B.     Applicable Law and Standard of Review

¶ 7     Hearsay statements are out-of-court statements offered to prove the truth of the matter asserted. CRE 801(c); *People v. Phillips*, 2012 COA 176, ¶ 61. Hearsay is inadmissible in a criminal prosecution unless an exception applies. CRE 802. One such exception is the one created by the child hearsay statute, which provides that out-of-court statements made by a child that describe unlawful sexual conduct are admissible if the court finds that the "time, content, and circumstances of the statement[s] provide sufficient safeguards of reliability." § 13-25-129(5)(a).

¶ 8     The Colorado Supreme Court has articulated eight factors (the reliability factors) that may guide a trial court's analysis in

evaluating the reliability of a child's hearsay statement: (1) whether the statement was made spontaneously; (2) whether the statement was made while the child was still upset or in pain from the alleged abuse; (3) whether the language of the statement was likely to have been used by a child the age of the declarant; (4) whether the allegation was made in response to a leading question; (5) whether either the child or the hearsay witness had any bias against the defendant or any motive to lie; (6) whether any other event occurred between the time of the abuse and the time of the statement that could account for the contents of the statement; (7) whether more than one person heard the statement; and (8) the general character of the child. *People v. Dist. Ct.*, 776 P.2d 1083, 1089-90 (Colo. 1989).

¶ 9     The reliability factors serve as a guide for the trial court's analysis, "but they are not mandatory," and a "[f]ailure to establish all factors favoring admission does not foreclose the admissibility of a statement." *People v. Rojas*, 181 P.3d 1216, 1219 (Colo. App. 2008). While the trial court should make specific findings on factors that establish "sufficient guarantees of reliability," its decision to admit the statement will be affirmed absent such

4

findings if the record demonstrates an adequate factual basis to support the trial court's determination. *People v. Bowers*, 801 P.2d 511, 521-22 (Colo. 1990).

¶ 10 While a defendant may subpoena a child victim to testify at a pretrial reliability hearing, "there is no requirement that the court must take such testimony," and the defendant must show that the child's testimony would be both "relevant and necessary." *People v. Thompson*, 2017 COA 56, ¶ 142 (quoting *People v. Snyder*, 849 P.2d 837, 838 (Colo. App. 1992)).

¶ 11 We review a trial court's decision to admit a child's hearsay statement for an abuse of discretion. *Rojas*, 181 P.3d at 1219. A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misunderstanding or misapplication of the law. *Thompson*, ¶ 91.

C. Exclusion of C.V.'s Testimony at the Pretrial Hearing

¶ 12 We reject Mills's argument that C.V.'s testimony was necessary to establish the reliability of her statements. *See id.* at ¶ 142 (a defendant may subpoena a child victim to testify at a pretrial hearing upon a showing that the child's testimony is both

"relevant and necessary" for the court's reliability determination (citation omitted)).

¶ 13    The trial court said that it had "watched the entirety of" the recorded forensic interview and was able to make a reliability determination based on review of the video alone. The court noted that it was able to observe the interview environment; the types of questions the interviewer asked; C.V.'s language, demeanor, and character; and concerns that C.V. raised during the interview. While C.V.'s testimony may have been helpful to assist the court in determining certain reliability factors (e.g., whether she was still in pain from the abuse and whether she had bias against Mills or a motive to lie at the time of her forensic interview), the factors aren't mandatory. *See Rojas*, 181 P.3d at 1219. Rather, they are merely a guide, and a "[f]ailure to establish all factors favoring admission does not foreclose the admissibility of a statement." *Id.* We also note that C.V. alleged that the abuse first happened in 2019, her interview took place in 2021, and the pretrial hearing occurred in 2023. Thus, her testimony about statements she had made more than a year before the pretrial hearing "would not add anything meaningful to the court's analysis because it had ample evidence

6

from the time when [C.V.] had made those statements." *Thompson*, ¶ 144.

¶ 14     We also reject Mills's contention that the trial court's ruling declining his request to question C.V. at the pretrial hearing denied him the "ability to participate in the hearing," thereby violating his right to due process. *See People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003) ("Procedural due process involves the manner in which state action occurs and requires notice and a fair opportunity to be heard.").

¶ 15     Mills's reliance on *People v. Brown*, 749 P.2d 436 (Colo. App. 1987), to support his due process argument is misplaced. In *Brown*, a division of this court concluded that a reliability hearing was inadequate because the defendant had "no reasonable notice that the hearsay statements . . . would be offered and no knowledge as to the details of the statements." *Id.* at 438. In contrast, the prosecution in this case gave Mills notice of the statements, and he meaningfully participated in the hearing through his counsel — including making the argument that he should be permitted to subpoena C.V. to testify. And as noted above, a court isn't required

7

to allow a defendant to question a child victim unless it is necessary for a reliability determination. *See Thompson*, ¶ 142.

### D. Reliability Findings

¶ 16 Mills next argues that even if the pretrial hearing was adequate, the trial court's reliability findings were erroneous. He contends that (1) the trial court didn't consider the timing of the interview, which occurred two years after the abuse; (2) C.V.'s statements weren't spontaneous; (3) there was "no evidence that C.V. was still in pain or upset from the alleged abuse"; and (4) the court made "no findings" about bias. These factors, he argues, weigh against reliability. We discern no error.

¶ 17 The trial court made the following findings regarding the reliability factors:

- C.V. knew that the interview was being video-recorded (and therefore that multiple people might hear her statements).

- "[T]he language was consistent with the court's experience of a 10-year-old child. There was no language that seemed inappropriate or abnormal for a 10-year-old."

- C.V. "had eye contact" and was "responsive" and "diligent."

- "[T]here were no leading questions in the forensic interview. They were all open-ended questions."

- "[T]here was not any bias that the court saw in the interview. I recognize there might be a larger context for the jury to determine [sic] with witnesses."

- C.V. responded honestly when she didn't know the answer to a question, expressed concern that the diagrams on which she marked the locations where Mills touched her would be disclosed to her mother, and noted to the interviewer at one point that she had "forgot[ten] to tell her mom about something that had happened." She thus displayed "age-appropriate" and "responsive" "concern as to either embarrassment or getting in trouble."

¶ 18    Mills doesn't argue that any of the court's findings are unsupported by the record; he just contends that other factors weighed against reliability. However, as discussed above, "the fact that not all the relevant factors support admissibility does not

9

require exclusion of the statements." *Rojas*, 181 P.3d at 1220.
Given the court's thorough findings about "which factors establish
'sufficient safeguards of reliability,'" we conclude that it didn't abuse
its discretion by admitting C.V.'s interview. *Id.* at 1219 (citation
omitted); *see also People v. Rhea*, 2014 COA 60, ¶ 58 ("[U]nder the
abuse of discretion standard, the test is not 'whether we would have
reached a different result but, rather, whether the trial court's
decision fell within a range of reasonable options.'" (citation
omitted)).

### III.    Prosecutorial Misconduct

¶ 19    Mills next contends that his conviction should be reversed
because of prosecutorial misconduct. We discern no reversible
error.

### A.    Applicable Law and Standard of Review

¶ 20    We evaluate claims of improper argument in the context of the
argument as a whole and in light of evidence before the jury. *People
v. Perea*, 126 P.3d 241, 247 (Colo. App. 2005). A prosecutor has
wide latitude to make arguments based on facts in evidence and
reasonable inferences drawn from those facts. *People v. McBride*,
228 P.3d 216, 221 (Colo. App. 2009). However, the prosecutor may

not misstate the evidence, mislead the jury, or insert personal opinion or personal knowledge. *Domingo-Gomez v. People*, 125 P.3d 1043, 1049-50 (Colo. 2005).

¶ 21    The trial court has discretion in determining whether a prosecutor's statements constitute inappropriate prosecutorial argument, and we won't disturb the court's rulings absent a showing of an abuse of that discretion. *People v. Rodriguez*, 2021 COA 38M, ¶ 27.

¶ 22    We review preserved challenges to prosecutorial misconduct for harmless error. *Wend v. People*, 235 P.3d 1089, 1097 (Colo. 2010). An error is harmless if "there is no reasonable possibility that it contributed to the defendant's conviction." *People v. Vergari*, 2022 COA 95, ¶ 17 (citation omitted). We review unpreserved challenges for plain error. *People v. James*, 117 P.3d 91, 95 (Colo. App. 2004). For prosecutorial misconduct to constitute plain error, it "must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119

P.3d 1073 (Colo. 2005). Prosecutorial misconduct in closing argument rarely constitutes plain error. *Id.*

### B. Lowering the Burden of Proof

¶ 23 During closing argument, the prosecutor said,

> [C.V.] is not a criminal mastermind. As defense said, she is not a sociopath. Is it more likely that [C.V.] concocted a very detailed story about two incidents of sexual assault occurring in two different rooms at the house they used to live in, with different types of sexual contact, in different arrangements, at a bench, on a bed? Is it likely she made that up and has stuck to that story all this time? Or is it more likely that she is telling us that, she told the forensic interviewer that, she told you that because it happened.

¶ 24 Mills's counsel objected, arguing that the prosecutor's comments about which "story" was "more likely" lowered the prosecution's burden of proof from "beyond a reasonable doubt" to "more likely." The trial court then told the jury, "You all know what the burden of proof is. You have an instruction on it. I have given it to you." Mills repeats his argument on appeal.

¶ 25 While the prosecutor's comments were perhaps inartful, we don't perceive them as commenting on or lowering the burden of proof. Rather, they immediately followed an extensive discussion

12

about C.V.'s credibility and were a fair response to defense counsel's arguments that C.V. fabricated the allegations but couldn't "admit that," so she "ma[d]e herself believe" them. *See People v. Roadcap*, 78 P.3d 1108, 1114 (Colo. App. 2003) ("A prosecutor has wide latitude to respond to a defendant's 'opening salvos' in closing argument." (citation omitted)); *see also infra* Part III.C.

## C.    Disbelieving Testimony

¶ 26    Mills next argues that the following statements amount to prosecutorial misconduct because they improperly told the jurors they had to believe C.V. was lying in order to acquit Mills:

- "You have been given two theories as to what is going on here.  The defense theory is that she made this all up.  She calculated it.  She is manipulative.  She involved law enforcement.  She involved the DA's office.  She involved you."

- "Do you think that little girl is capable of what the defense is alleging?  There is absolutely no way that she could have . . . got[ten] so mad, she was so furious that

in her head she said I am going home [to tell] my mom that he sexually assaulted me."

- "We all have experiences with kids, children. Isn't the more reasonable falsity that he hit me, he spanked me really hard, he pushed me, he took something away from me. She is a kid." C.V. could say "a lot of things" if she "wanted the defendant out of the house. But that he sexually assaulted me, that makes absolutely no sense."

- "If [C.V.] went into that forensic interview with the goal of getting the defendant kicked out of the home, wouldn't she make up an outrageous story. Wouldn't it be the most aggressive, the most violent, the most atrocious thing you ever heard if that is her goal."

¶ 27    Because Mills's attorney didn't object to any of these statements on the grounds on which Mills now appeals, we review them for plain error. *See People v. Ujaama*, 2012 COA 36, ¶ 37 (an

issue isn't preserved if the defendant objected on different grounds than those raised on appeal).[2]

¶ 28    Mills argues this case is like *People v. Cuellar*, 2023 COA 20, and *United States v. Cornett*, 232 F.3d 570 (7th Cir. 2000), in which the courts concluded that the prosecutor had misstated the law by telling the members of the jury that they couldn't acquit the defendant unless they believed key people had lied.  *Cuellar*, ¶ 67 (The prosecutor improperly argued that the jury could not acquit the defendant unless it believed that the child "fabricated this whole entire thing, that she lied about this whole [thing]."); *Cornett*, 232 F.3d at 574 (The prosecutor improperly argued that the jury would have to find witnesses are "lying about the evidence that they presented" if they "are going to acquit [the defendant].").

¶ 29    Mills's reliance on *Cuellar* and *Cornett* is misplaced because those cases are factually dissimilar to this one.  Here, the prosecutor didn't argue that the jury was required to conclude that C.V. was lying to acquit Mills; he merely argued that it was unlikely

_____

[2] While we note that defense counsel objected after the first statement, he argued only that the defense's theory was that the prosecution hadn't proved its case.  Counsel didn't object after any of the other statements.

that C.V. had made up the sexual assault allegations.  These statements were a proper response to defense counsel's closing, in which counsel argued that C.V.'s allegations weren't credible and that she fabricated the abuse to "gain . . . a more peaceful home life" by ensuring that Mills moved out.  *See Roadcap,* 78 P.3d at 1114; *see also People v. Duncan,* 2023 COA 122, ¶ 32 (noting that a prosecutor is allowed to "comment on the lack of evidence confirming [a] defendant's theory of the case." (citation omitted)).

### D.    Injecting Personal Knowledge and Experience

¶ 30    Lastly, Mills argues that the prosecutor improperly injected his personal knowledge and experience during closing argument when he said, "If [C.V.] is a criminal mastermind, I haven't seen anyone do that ever.  To maintain her story, her emotions, her demeanor, her experiences for this long to this many strangers, wow.  It is almost too unimaginable."

¶ 31    We agree that it was improper for the prosecutor to inject his personal experience that he "ha[d]n't seen anyone do that ever" and imply that the prosecution had information that the jury didn't.  *See Domingo-Gomez,* 125 P.3d at 1050 ("[P]rosecutorial remarks that evidence personal opinion, personal knowledge, or inflame the

16

passions of the jury are improper."); *cf. People v. Ray*, 2025 CO 42M, ¶ 129 ("Comments calculated to mislead the jury or that suggest the prosecution has access to evidence the jurors don't are improper."). But we discern no reversible error.

¶ 32 First, this comment was brief and not repeated. *See Cuellar*, ¶ 51 (concluding that improper statements were harmless due to the brief nature of the argument and fact that the prosecutor did not repeat the statements). Second, defense counsel didn't object, indicating that counsel didn't see the argument as "overly damaging." *People v. Lovato*, 2014 COA 113, ¶ 65 (citation omitted). Thus, this statement doesn't cast serious doubt on the reliability of Mills's conviction. *See Rhea*, ¶ 71.

## IV. Disposition

¶ 33 The judgment of conviction is affirmed.

JUDGE J. JONES and JUDGE MEIRINK concur.

17