In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2083

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WARREN E. CORNETT,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Indiana,
Indianapolis Division.
No. 1:99CR00100-001--Sarah Evans Barker, Chief
Judge.


Argued October 3, 2000--Decided November 13,
2000



  Before Flaum, Chief Judge, and Coffey and
Rovner, Circuit Judges.

  Flaum, Chief Judge.  Warren Cornett
appeals his conviction for possessing a
firearm after being convicted of a
felony, arguing that the prosecutor made
several comments during her closing
argument that deprived him of a fair
trial. Specifically, Cornett contends
that the prosecutor (1) misstated the
burden of proof when she said that, in
order to acquit Cornett, the jury must
find that certain witnesses lied, and (2)
vouched for the credibility of government
witnesses when she mentioned that police
officers take an oath to uphold the law.
We conclude that these comments, although
improper, did not deprive Cornett of a
fair trial. Accordingly, we affirm the
judgment of the district court.

I.
Background

  A federal grand jury indicted Cornett on
one count of possession of a firearm by a
felon, 18 U.S.C. sec. 922(g)(1). At

trial, government witness Roger Gammon, the Indianapolis police officer who arrested Cornett, testified that he observed Cornett seated in the driver's seat of a car drinking a beer; Cornett was double-parked and was accompanied by one passenger, Nicole Pittman. Attempting to discern whether Cornett was intoxicated, Gammon walked to the car and stood next to the driver's door. From this position, said the officer, he saw the grip and trigger of a handgun protruding from a gap separating the two front seats. Gammon asked if either Cornett or Pittman had a gun permit and both replied "no." According to Gammon, Cornett said that "he had purchased the handgun approximately three weeks earlier." Gammon arrested both Cornett and Pittman.

Another government witness, Paul Arkins, an Indianapolis detective on special assignment to the United States Bureau of Alcohol, Tobacco and Firearms, testified that Cornett told him a different story about the gun. Six weeks after Cornett's arrest, Detective Arkins interviewed Cornett in jail and read him Officer Gammon's arrest report. According to Arkins, Cornett denied telling Officer Gammon that he purchased the gun. Rather, Cornett explained that "some other dude" had been in the car "just before" Officer Gammon arrived and had left the gun in the back seat. Cornett told Arkins that, after the other individual left, Cornett picked up the gun and tucked it into the front seat cushion.

Cornett called only one witness, passenger Nicole Pittman. Contradicting Officer Gammon, Pittman denied that she or Cornett had been asked about gun permits, and that Cornett had told Officer Gammon that he had purchased the gun. Additionally, Pittman testified that she never noticed the gun while she was in the car. On cross-examination, though, Pittman admitted that she had been smoking marijuana and drinking beer five minutes prior to Officer Gammon's arrival and that the radio was playing during the encounter with Officer Gammon. Pittman also testified that in the "couple of hours" preceding the arrests the only other person in the car had been her mother.

In the defense's closing argument,

Cornett's attorney stressed the inconsistencies between Pittman's and Officer Gammon's testimony, suggesting that the incident did not occur the way Officer Gammon described:

Maybe it wasn't like Officer Gammon described. I don't believe that gun was positioned the way he described it.

So let's look at his statement. Well, it's a convenient way to stick my client with this charge by saying, Well, hey, my client admitted to it. My client admitted to Officer Gammon, according to Officer Gammon, my client says, "Yeah, that gun, I don't have a permit for it. I bought it from a guy a few weeks ago."

Is it reasonable to believe that my client would say that to the police officer at that time? I don't think so.

Additionally, defense counsel argued there were holes in the government's case, such as a lack of fingerprint evidence and the absence of written or audio records of Cornett's statements to the police.

In her rebuttal, the Assistant United States Attorney stated that prosecutors and police officers take oaths to follow the law and so do not "stick" people with charges: "That's not what the job is of a prosecutor. It's not what the job is of law enforcement. We don't stick people with charges. We take oaths. We have responsibilities." The prosecutor briefly addressed the burden of proof and thenreturned to her "oath" argument:

Law enforcement officers, in fact, if you've ever seen an induction ceremony, take an oath. They take an oath to uphold the laws of the jurisdiction in which they work.

Officer Gammon took an oath to uphold the laws of the state of Indiana and the Constitution of the United States of America.

Detective Arkins took the same oath.

Defense counsel objected that the prosecutor was improperly bolstering her witnesses. The court agreed and instructed the prosecutor to proceed to a discussion of the evidence.

The prosecutor also argued that to find Cornett not guilty the jury would have to conclude that Officer Gammon, Detective Arkins and Pittman had all lied on the stand:

 . . . [I]f you are going to find Mr. Cornett not guilty . . . you are going to have to find that all three of them came in here, took an oath, and lied to you. And there is no other way to characterize that. And so go back and talk about it, but talk about it in that way. You'll have to find that they lied to you.

At the end of her rebuttal, the prosecutor returned to this argument:

 If you're going to find reasonable doubt, you have to find it from what you do have: From Officer Gammon's testimony, Nicole Pittman's testimony, Detective Arkins' testimony. You are going to have to disregard what they've said. You are going to have to find that they are lying about the evidence that they presented to you, if you are going to acquit Mr. Cornett. It's really that black and white./1

 After closing arguments the judge instructed the jury that the government has the burden of proving the defendant's guilt beyond a reasonable doubt, that this burden remains on the government throughout the case, and that the defendant is never required to prove his innocence or to produce any evidence at all. The court also informed the jury that they are to consider only the evidence and that the closing arguments are not evidence unless made as an admission or stipulation of fact. Finally, the court instructed the jury that they are the sole judges of the witnesses' credibility, and that a law enforcement officer's testimony is neither more nor less entitled to belief than any other witness.

II.
Discussion

 To determine if a prosecutor's comments deprived a defendant of a fair trial, we must first decide whether "the comments, looked at in isolation, were improper." United States v. Cusimano, 148 F.3d 824, 831 (7th Cir. 1998). If the remarks were

improper, we then "look at the remarks in the light of the entire record to determine whether the defendant was deprived of a fair trial." Id. In assessing the prejudicial nature of a prosecutor's improper comments, we consider five factors: (1) the nature and seriousness of the comments; (2) whether the defense counsel invited the prosecutor's remarks; (3) whether the trial court's instructions to the jury were adequate to cure any prejudice that might otherwise result from the improper comments; (4) whether the defense was able to counter the improper arguments through rebuttal; and (5) the weight of the evidence against the defendant. Id. at 831-32.

## A. Burden of Proof

Cornett first argues that the prosecutor misstated the burden of proof when she told the jury that to acquit the defendant they must find that several witnesses lied. In United States v. Vargas, 583 F.2d 380, 387 (7th Cir. 1978), we held that it is improper for a prosecutor to argue that the jury must find that a witness lied to acquit the defendant. See also United States v. Phillips, 527 F.2d 1021, 1023 (7th Cir. 1975) (improper for prosecutor to argue that to acquit the jury must find that government framed defendant). We have revisited this issue several times since Vargas, distinguishing cases where the prosecutor did not explicitly argue that the jury must find a witness lied in order to acquit. See United States v. Amerson, 185 F.3d 676, 687 (7th Cir. 1999) (not improper for prosecutor to comment that "[y]ou simply cannot believe the testimony of these police officers and believe the defendant's testimony at the same time" because comments did not force jury to decide between acquitting defendant and believing police officers); United States v. Marshall, 75 F.3d 1097, 1107-08 (7th Cir. 1996) (not improper for prosecutor to comment that jury should acquit if it disbelieved FBI agent because prosecutor did not state that disbelieving FBI agent was the only way to acquit); United States v. Hernandez, 865 F.2d 925, 929-30 (7th Cir. 1989) (same). This case, however, cannot be distinguished in a similar fashion. Here, the prosecutor argued that the jury "[would] have to find that [Officer

Gammon, Detective Arkins and Pittman] are lying about the evidence that they presented to you, if you are going to acquit Mr. Cornett. It's really that black and white." Viewed in isolation, the prosecutor's remarks misstated the burden of proof because the jury could have believed that the witnesses told the truth and yet still found that the government had failed to prove Cornett's guilt beyond a reasonable doubt. See Vargas, 583 F.2d at 387. Therefore, the prosecutor's comments were improper. Next, we turn to whether these comments deprived Cornett of a fair trial.

As noted above, we analyze several factors when assessing the prejudicial effect of a prosecutor's misstatement of the law. Of these factors, we place considerable emphasis on the curative effect of jury instructions and the weight of the evidence. See United States v. Miller, 199 F.3d 416, 423 (7th Cir. 1999); United States v. Hauert, 40 F.3d 197, 205 (7th Cir. 1994); United States v. Davis, 15 F.3d 1393, 1400-02 (7th Cir. 1994). Here, in its final charge to the jury, the district court gave proper instructions on the burden of proof and directed the jury to disregard the closing arguments to the extent they were not supported by the evidence. Absent evidence to the contrary, we presume that the jury understood and followed the district court's instructions. See United States v. Nobles, 69 F.3d 172, 184 (7th Cir. 1995). Regarding the weight of the evidence, the government presented uncontroverted proof that Cornett possessed a firearm. Officer Gammon testified that he recovered a gun from Cornett's car, and both Officer Gammon and Detective Arkins testified that Cornett admitted possessing the firearm. Pittman, Cornett's only witness, did not contradict this evidence. Pittman's testimony that she did not see the gun tucked in the front seat cushion tends only to establish that Pittman did not personally observe the gun. Moreover, Pittman's testimony is undercut by her admission that she was smoking marijuana and drinking beer five minutes before the incident. And, finally, Cornett did not introduce any evidence to dispute Detective Arkins's testimony that Cornett admitted possessing the firearm or to attack Detective Arkins's credibility.

Moving to the remaining factors; first, the prosecutor's improper comments were clearly out of bounds. The prosecutor spoke to an altering of the burden of proof when she argued that the defendant had to prove certain witnesses lied to be acquitted. We also note that the prosecutor's misstatement of the law was not a brief and isolated comment; rather, it was a repeated theme of her rebuttal argument. Second, Cornett did not invite the prosecutor's improper comments. Third, because the prosecutor made the challenged comments during rebuttal, defense counsel did not have a chance to respond. On the other hand, defense counsel never specifically objected to the prosecutor's misstatement of the burden of proof. Therefore, the court was not presented with the opportunity to give curative instructions, nor did the prosecutor have the opportunity to acknowledge her error to the jury and amend her argument accordingly.

Generally, a prosecutor's improper comments do not deprive a defendant of a fair trial when the district court properly instructs the jury and the weight of the evidence is in the government's favor. See Miller, 199 F.3d at 422-23 (defendant not deprived of a fair trial even though error was serious, directed at the only contested issue at trial and defendant had no opportunity to respond); United States v. Morgan, 113 F.3d 85, 90-91 (7th Cir. 1997) (defendant not deprived of a fair trial even though comments not invited and defendant did not have an opportunity to respond); United States v. Badger, 983 F.2d 1443, 1456 (7th Cir. 1993) (same). This case provides no reason to depart from this approach. Given the court's instructions and the weight of the evidence, we cannot find any indication that the jury would have returned a different verdict absent the prosecutor's misstatement of the law.

B.  Improper Vouching

Cornett also argues that the prosecutor improperly vouched for the good faith of police witnesses when she stated that police officers take an oath to follow the law./2 Improper vouching occurs when a prosecutor expresses her personal opinion about the truthfulness of a witness or when she implies that facts not before the jury lend a witness credibility. See United States v.

Renteria, 106 F.3d 765, 767 (7th Cir. 1997). The government argues that the prosecutor's remarks about the police officers' oaths were similar to commenting that they were "good cops," a comment we found permissible in United States v. Alexander, 163 F.3d 426, 429 (7th Cir. 1998). In Alexander, however, we noted that the "good cops" comment came only after the prosecutor compared one police officer's testimony to another police officer's report to show that they were consistent. See id. In this case, there is no similar connection to the evidence. Here, the prosecutor simply bolstered the credibility of the police officers by commenting on their occupational integrity. Although we do not find a case directly on point, we have generally held that it is improper for a prosecutor to vouch for the credibility of witnesses by referring to facts outside the record. See United States v. Johnson-Dix, 54 F.3d 1295, 1304-05 (7th Cir. 1995) (improper to state that police officer has no reason to risk his career and reputation by lying); United States v. Boyd, 54 F.3d 868, 871 (D.C. Cir. 1995) (same). The Assistant United States Attorney also invoked her own oath as a prosecutor, thus implying that she would not present perjured testimony to the jury and further bolstering the officers' credibility. This was improper as well. See United States v. Torres, 809 F.2d 429, 446 (7th Cir. 1987) (Flaum, J., concurring). Given the prosecutor's remarks, we examine whether they deprived Cornett of a fair trial.

As noted above, we focus on the jury instructions and the weight of the evidence when assessing the prejudicial nature of a prosecutor's improper comments. Here the district court's instructions effectively addressed any prejudice that might otherwise have resulted from the improper vouching. The court instructed the jury that they were the "sole judges of the credibility of the witnesses" and that a police officer's testimony "is neither more nor less entitled to belief than any other witness." As previously stated, the weight of the evidence favors the government. Cornett has argued that the government's case depended on the credibility of Officer Gammon and Detective Arkins, the two witnesses for

whom the prosecutor improperly vouched. Since there was no indication that the credibility of these officers was ever in serious doubt, the improper vouching was harmless. Pittman's testimony constituted only a weak attack on Officer Gammon's version of events, and the defense never questioned Detective Arkins's credibility.

Overall, an examination of the record does not suggest the conclusion that the prosecutor's comments prejudiced the defendant. The comments, while improper, were not critical to the outcome of the case. Although the prosecutor did vouch for witnesses central to the government's case, the prosecutor never stated that she personally believed the police officers. Furthermore, the district court sustained a defense objection, thus signaling to the jury that the thrust of the prosecutor's remarks was improper. Additionally, the prosecutor's comments were in response to defense counsel's suggestion that Officer Gammon and the prosecution were trying to "stick" Cornett with a conviction. Finally, although the prosecutor twice vouched for the police officers' credibility during her rebuttal argument, this circumstance, standing alone, cannot establish that the prosecutor's comments deprived the defendant of a fair trial. See Johnson-Dix, 54 F.3d at 1305 (prosecutor's vouching for a witness's credibility during rebuttal argument did not deprive defendant of a fair trial because weight of the evidence was against the defendant); see also Davis, 15 F.3d at 1401-02 (reasoning that district court's instruction that jurors are sole judges of witness credibility "effectively addressed the risk the vouching presented and sufficiently dispelled any prejudicial effect the vouching may have had").

III.
Conclusion

The prosecutor misstated the burden of proof and improperly vouched for the credibility of government witnesses. However, the court concludes that these remarks did not deprive Cornett of a fair trial. Therefore, the judgment of the district court is AFFIRMED.

/1 Although it appears that Cornett objected only to the prosecutor's improper vouching and not to her misstatement of the burden of proof, we will assume for purposes of analysis that Cornett objected to both comments. Because we conclude that neither comment deprived Cornett of a fair trial, whether Cornett objected to both comments is not determinative.

/2 The government frames this issue as whether the prosecutor's "reminder" that the witnesses took an oath was improper. This assertion misreads the nature of the objection. The remarks objected to by the defense did not refer to the oath witnesses take before testifying, which is the only oath this jury could have been aware of from the evidence adduced at trial. Rather, the defense objected when the prosecutor commented that, upon becoming police officers, Officer Gammon and Detective Arkins took an oath to uphold the law. Because no evidence of this oath of office was introduced at trial, it is inaccurate to characterize the prosecutor's comments as a "reminder."