COURT OF APPEALS
DECISION
DATED AND FILED

October 20, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1078-CR**

Cir. Ct. No. **2016CF837**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANGELO D. GRAY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Affirmed.*

Before Brash, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Angelo D. Gray appeals his judgment of conviction for conspiracy to commit armed robbery, fleeing or eluding an officer, and first-

degree recklessly endangering safety. He also appeals the order denying his postconviction motion without a hearing. Gray asserts that certain statements by the prosecutor during closing arguments were improper, which constitutes plain error. Gray also contends that his trial counsel was ineffective for failing to object to those comments.

¶2 Additionally, Gray asserts that his trial counsel was ineffective for failing to request a jury instruction addressing the absence of a recording of his police interview. He further claims counsel was ineffective for failing to inform the trial court[1] at the time of sentencing about the length of his revocation sentence that had been imposed in a different case.

¶3 The trial court held that the prosecutor's statements were reasonable; thus, there was no error, nor was trial counsel ineffective for failing to object. The court further found that Gray had not demonstrated that he was prejudiced by either the absence of the jury instruction or by the court's lack of knowledge regarding the length of his revocation sentence. We affirm.

## BACKGROUND

¶4 The charges against Gray stem from incidents that occurred in August 2015. Between August 25 and August 30, 2015, three vehicles were stolen at gunpoint from their owners at different locations in Milwaukee and Wauwatosa. On August 31, 2015, Milwaukee Police Officers spotted the second car that had been stolen—a white Nissan Rogue. The vehicle had a large dent on the driver's side,

---

[1] The Honorable Pedro Colon presided over Gray's jury trial, imposed his sentence, and reviewed his postconviction motion. We refer to him generally as the trial court.

which had been described by the victim, and the license plates on the vehicle did not match its make and model.

¶5 The officers attempted to stop the vehicle, but the driver did not comply. Instead, the driver accelerated to sixty-five miles per hour on a street where the speed limit was thirty miles per hour. The vehicle veered in and out of oncoming traffic, then ran a red light, nearly colliding with another vehicle that had the right of way. The vehicle continued at a high rate of speed, disregarding stop signs and running several vehicles off the road. The vehicle was ultimately abandoned in a parking lot on Oakland Avenue.

¶6 Other responding officers conducted an interview of a man and a woman who were walking on the sidewalk not far from where the Nissan Rogue was abandoned. The man, later identified as Gray, was sweating and breathing heavily. The woman, Terrianna Carter, stated that Gray was her boyfriend. Carter told police that she was a passenger in the Nissan Rogue, and that Gray had picked her up to give her a ride to a friend's house. She stated that when the police attempted to stop the vehicle, Gray began to drive fast to get away from them. At that point, she stated that she assumed the vehicle was stolen. Both Gray and Carter were taken into custody.

¶7 Gray made a custodial statement to police. He stated that he paid twenty dollars to an unknown drug user for the Nissan Rogue. He admitted to driving the Nissan during the high-speed chase, describing in "great detail" how he tried to elude the police and almost crashed into other vehicles.

¶8 Additionally, Gray admitted that a cell phone recovered from the Nissan Rogue was his. In examining the phone, police found several text message exchanges between Gray and Deonta Glover on August 25, 26, 27, and 28 that

police believed referred to the theft of motor vehicles. Furthermore, their phone records indicated numerous communications between Gray and Glover around the times of all three armed robberies. Moreover, cell phone tower records reflected that both Gray's and Glover's phones were in the areas where the armed robberies took place at the times the vehicles were stolen, and both phones left those areas soon after the robberies.

¶9 Gray moved to suppress his statement to police on the ground that he had not been advised of his *Miranda*[2] rights. At a hearing on the motion, Detective Michael Romeis of the Wauwatosa Police Department, who interviewed Gray while he was in custody, testified that he had advised Gray of his *Miranda* rights, and that Gray had agreed to waive his rights and talk about the case.

¶10 However, Detective Romeis also testified that the interview with Gray had inadvertently not been recorded. The detective explained that he had brought a recorder with him and intended to record the interview, but after the interview realized nothing had been recorded. He admitted that the failure to record the interview was likely due to "operator error[.]"

¶11 The trial court denied Gray's motion, finding the detective's testimony credible. The prosecutor broached the topic of whether WIS JI—CRIMINAL 180, which instructs the jury that it may "consider the absence of an audio or audio and visual recording of the interrogation in evaluating the evidence relating to the interrogation and the [defendant's] statement in this case," should be included in the jury instructions for the trial. The court declined to rule on that issue, stating that it did not "have to cross that bridge" at that time.

---

[2] *See **Miranda v. Arizona***, 384 U.S. 436 (1966).

4

¶12    The matter proceeded to trial at the end of October 2016. Glover testified on behalf of the State, specifically about the theft of the Nissan Rogue. Glover explained that Gray had contacted Glover, and told Glover that he needed a car. Gray and two other people picked up Glover and proceeded to drive past multiple gas stations until they found a car Gray wanted—the Nissan Rogue. Glover then got out of the car, stole the Nissan from its owner at gunpoint, and gave the Nissan to Gray, for which Gray paid Glover about $300.

¶13    Glover stated that during the robbery he wore a red and black jacket that Gray had given him. Glover further testified that he and Gray communicated on their cell phones by call and text before and during the robbery.

¶14    The owner of the Nissan Rogue, C.T., also testified. She stated that she had parked her car at a gas station at 68th Street and North Avenue in Wauwatosa. Prior to entering the gas station, she noticed an African American male pacing back and forth on a sidewalk nearby, talking on his cell phone. When she walked out of the gas station that male approached her, and as she tried to get into her vehicle, he "put a gun to [her] head" and ordered her to get out of the car.

¶15    Also testifying for the State was Detective Martin Keck from the Wauwatosa Police Department, who had conducted the custodial interview of Gray with Detective Romeis. He discussed the evidence retrieved from the cell phone found in the Nissan Rogue that Gray had admitted was his, and provided information regarding the text messages between Gray and Glover about the robberies. Detective Keck also testified that on that recovered cell phone, they had discovered two photographs of Gray standing in front of a white Nissan, wearing a black and red sweatshirt. Furthermore, Gray was wearing a black and red sweatshirt at the time of his arrest. The detective testified that C.T. was shown a photo of Gray

taken at the time of his arrest, and she stated that it brought her "back to the scene of the robbery."

¶16    Other officers testified regarding the cell tower evidence showing the location of Gray's and Glover's phones at the time the Nissan Rogue was stolen, and about the high-speed pursuit of that vehicle. Additionally, a fingerprint examiner from the Wisconsin State Crime Lab testified that fingerprints lifted from the rearview mirror of the Nissan and from compact discs found inside the vehicle were Gray's.

¶17    Gray testified in his defense. He stated that he had sold his cell phone to Carter's cousin, Rashawd Jiggens, but he had not deactivated it. Gray further stated that he had rented the Nissan Rogue from Jiggens without knowing that it was stolen. Gray also explained that the reason there were photographs of him standing by the Nissan on the cell phone was because his Facebook and Gmail accounts were still open on that phone, and photos taken with other phones are automatically sent to those accounts. Additionally, Gray denied calling or sending text messages to Glover. Furthermore, he testified that he had picked up Carter and Jiggens prior to the high-speed chase, and that Jiggens was driving during the police's pursuit of the Nissan.

¶18    The State called one of the investigating detectives from the Milwaukee Police Department as a rebuttal witness. That detective testified that he had performed a search for Jiggens using "a number of different sources[,] both police records and open sources," and had used alternative spellings of the name while conducting the search, but was not able to locate anyone by that name. The detective further testified that metadata from the phone found in the Nissan

indicated that the picture of Gray by the Nissan was taken with that phone, and not sent to his Gmail or Facebook account from a different phone.

¶19    During closing arguments, the prosecutor noted the inconsistencies between Gray's testimony and that of the police detectives who conducted his interview.  In particular, the prosecutor referred to Gray's denial that the cell phone found in the Nissan Rogue belonged to him:

> Now he told Detective Keck that this was his phone. Unfortunately, the interview wasn't recorded and he knows that and that's why he can say whatever he wants on the stand without us holding him accountable … but he said it to Detective Keck.  Detective Keck is a law enforcement officer.  He took an oath to enforce the law and he took an oath in court here to tell the truth.  He can call Detective Keck a liar all he wants, but the evidence in this case suggests that the liar is right here.

¶20    Then, in his rebuttal to the defense's closing argument, the prosecutor began by stating:

> Somebody lied to you during this trial and it's Mr. Gray 'cuz both sides can't be true, right?  Somebody has got to be lying so you have to decide what side you're going to be on. Nothing that he said is corroborated by anything.  As a matter of fact, what he's told you is contradicted by what's on the phone, it's contradicted by what Deonta Glover said, it's contradicted by Detective Keck.

¶21    Additionally, the prosecutor declared that C.T. "did not deserve to have a cold, hard steel of a gun placed against her head and her car stolen."  The prosecutor also told the jury "to imagine some new driver, some [sixteen-]year[-]old kid, on the street while Mr. Gray is ripping up the street" during the high speed chase with police, and asked whether we can "continue to survive in this society if we condone this type of behavior[.]"  Gray's trial counsel did not object to any of these comments by the prosecutor.

7

¶22    The jury convicted Gray of all three counts. The trial court sentenced him to three consecutive terms of imprisonment totaling eleven and one-half years of initial confinement and twelve years of extended supervision.

¶23    Gray filed a postconviction motion in February 2019. In his motion, Gray argued that the prosecutor had improperly vouched for the credibility of the detective who had interviewed Gray when he was arrested, and improperly appealed to the jurors' emotions with his remarks during his rebuttal argument. He further asserted that this constituted plain error, or, in the alternative, that his trial counsel was ineffective for failing to object to these improper arguments.

¶24    Additionally, Gray argued that his trial counsel was ineffective for failing to request WIS JI—CRIMINAL 180, relating to recordings of defendant interrogations. In particular, the instruction directs the inclusion of an additional statement in cases where an interrogation was not recorded:

> It is the policy of this state to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony. You may consider the absence of an audio or audio and visual recording of the interrogation in evaluating the evidence relating to the interrogation and the statement in this case.

*Id.* Because the police interview of Gray was inadvertently not recorded, Gray asserted that this instruction would have provided "important context" for the jury's evaluation of the inconsistencies between Gray's testimony and the detective's testimony.

¶25    Gray's trial counsel did, however, request the instruction late in the trial—after Gray had testified but before the State's rebuttal witness, and after the instructions had been provided to the parties by the trial court. The trial court indicated that it would consider the instruction if counsel had a draft for the court to

review or could refer the court to a standard instruction "in the next ten minutes," otherwise it would be excluded. The instruction was not given to the jury.

¶26    Gray also argued that his trial counsel was ineffective for failing to inform the trial court of the amount of time he was serving on revocation in Sheboygan County. Gray contended that this information was relevant to his sentence because the trial court imposed his sentences for these charges to run consecutively to the revocation sentence, and thus the court should have been provided with complete, accurate information. As a result, he sought a new sentencing hearing.

¶27    The trial court rejected Gray's claims in their entirety. It agreed with the State's assessment of the prosecutor's comments regarding the police detective—that when taken in their full context, they were not improper because the prosecutor "did not suggest that Detective Keck should be believed simply because he took an oath to enforce the law," but rather simply "pointed out facts to the jury which established why Detective Keck was believable." The court also agreed with the State's reasoning regarding the prosecutor's comments during rebuttal—that again, when taken in full context, they were meant to "focus[] the attention of the jury on the defendant's criminal conduct and not on the crime problem in Milwaukee or the distress of the victim," and thus were not improper. The court further held that Gray's trial counsel was not ineffective for failing to object to these comments because the court would have overruled any objection.

¶28    With regard to the jury instruction, the trial court found that Gray was not prejudiced by the fact that the instruction was not given, because his trial counsel "basically provided that context himself in his closing argument," and because of the significant amount of evidence against Gray. As for Gray's request for a new

9

sentencing hearing, the court stated that the revocation term would not have altered the sentence it imposed; specifically, the court indicated that the sentences would have been imposed consecutively regardless of the length of the revocation sentence, due to the "egregiousness of the offenses."

¶29 Therefore, the trial court denied Gray's postconviction motion without an evidentiary hearing. This appeal follows.

## DISCUSSION

### I. Improper Statements by the Prosecutor

¶30 We first discuss Gray's claim of improper statements by the prosecutor during his closing argument, which Gray asserts was plain error. The plain error doctrine "allows appellate courts to review errors that were otherwise waived by a party's failure to object." *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. Plain error is "error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *Id.* (citations omitted). The error that was not objected to must be "fundamental, obvious, and substantial" to be deemed plain error, such as "where a basic constitutional right has not been extended to the accused[.]" *Id.*, ¶¶21, 23 (citations omitted). We "employ this doctrine sparingly." *State v. Bell*, 2018 WI 28, ¶12, 380 Wis. 2d 616, 909 N.W.2d 750.

¶31 Gray's claim of prosecutorial misconduct calls into question whether his constitutional right of due process was violated. *See State v. Mayo*, 2007 WI 78, ¶43, 301 Wis. 2d 642, 734 N.W.2d 115 ("When a defendant alleges that a prosecutor's statements and arguments constituted misconduct, the test applied is whether the statements so infected the trial with unfairness as to make the resulting

conviction a denial of due process." (citations and internal quotation marks omitted)). This is a question of law that we review *de novo*. *Bell*, 380 Wis. 2d 616, ¶8.

¶32    "Counsel is allowed considerable latitude in closing arguments[.]" *State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166.  For example, a prosecutor may "comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors." *State v. Cameron*, 2016 WI App 54, ¶19, 370 Wis. 2d 661, 885 N.W.2d 611 (citation omitted).  Furthermore, "a prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented." *Id.* (citation omitted).  However, "'where the prosecutor goes beyond reasoning from the evidence to a conclusion of guilt and instead suggests that the jury arrive at a verdict by considering factors other than the evidence,' the statements are impermissible." *Jorgensen*, 310 Wis. 2d 138, ¶40 (citations and one set of quotation marks omitted).  Furthermore, a prosecutor has improperly vouched for a witness if he or she "expresses [his or] her personal opinion about the truthfulness of a witness or when [he or] she implies that facts not before the jury lend a witness credibility." *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000).

¶33    Gray contends that the prosecutor's comments regarding whether Gray or Detective Keck had lied during their testimony were improper.  In support of his argument, Gray relies on *Cornett*, where the prosecutor "told the jury that to acquit the defendant they must find that several witnesses lied." *Id.* at 574.  The court determined that this statement was improper because it suggested that the burden of proof was on the defendant to prove that certain witnesses had lied in order to obtain an acquittal. *Id.* at 575.

¶34    Gray also relies on ***Cornett*** to support his claim of improper vouching. The ***Cornett*** court held that the prosecutor had "bolstered the credibility of the police officers by commenting on their occupational integrity," and that courts have "generally held that it is improper for a prosecutor to vouch for the credibility of witnesses by referring to facts outside the record." ***Id.*** at 575-76.  Gray argues that the prosecutor's comments that Detective Keck "is a law enforcement officer" who "took an oath to enforce the law" are "remarkably similar" to the prosecutor's comments that were found to be improper in ***Cornett***.  *See id.*

¶35    However, similar to the ultimate holding in ***Cornett***, we conclude that even if the prosecutor's comments in this case were deemed to rise to the level of plain error, the error was harmless.  *See id.* at 576.  When a defendant demonstrates that the error at issue was "fundamental, obvious, and substantial," the burden shifts to the State to show that the error was harmless.  ***Jorgensen***, 310 Wis. 2d 138, ¶23. A harmless error inquiry asks "whether the State can prove 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]'" ***Id.*** (citations and one set of quotation marks omitted).  Indeed, the ***Cornett*** court stated that "a prosecutor's improper comments do not deprive a defendant of a fair trial when the [trial] court properly instructs the jury and the weight of the evidence is in the government's favor." ***Id.***, 232 F.3d at 575.

¶36    Here, the jury was properly instructed that its verdict was to be based on the evidence and that the parties' closing arguments, and their "conclusions and opinions" included in those arguments, were not evidence.  "Jurors are presumed to have followed jury instructions." ***State v. LaCount***, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.

¶37 Furthermore, the State's case against Gray was quite strong. Besides Detective Keck's testimony regarding Gray's custodial statement, the State presented Glover's testimony implicating Gray in the robberies; Glover's testimony that he was wearing a red and black jacket that Gray had given him when he stole the Nissan Rogue; evidence that Gray was wearing a red and black sweatshirt when he was arrested; C.T.'s statement that seeing the picture of Gray wearing the sweatshirt took her "back to the scene of the robbery," an indication that her assailant was wearing that sweatshirt during the robbery;[3] C.T.'s testimony that her assailant had been talking on a cell phone prior to stealing her car; the evidence of Gray's fingerprint on the rearview mirror of the Nissan Rogue; and other officers' testimony regarding the cell tower evidence relating to the location of Gray's and Glover's phones around the time of the robberies, and that the picture of Gray by the Nissan was taken by the cell phone recovered by police in that vehicle, and not taken and sent by another phone.

¶38 Additionally, the jury heard Gray's testimony that attempted to provide innocuous explanations for this evidence. The jurors were also properly instructed that they were the "judges of the credibility of the witnesses and the weight of the evidence." The verdicts indicate that the jury did not find Gray's explanations credible. *See State v. Wilson*, 149 Wis. 2d 878, 894, 440 N.W.2d 534 (1989) (the jury "has the great advantage of being present at the trial" in that it "can

---

[3] Gray argued in his postconviction motion that the prosecutor misrepresented C.T.'s statement in his closing argument—stating that she had positively identified the sweatshirt—and that this represented improperly argued facts not in evidence. The trial court disagreed, stating that C.T.'s statement was "sufficient to support the State's argument concerning the type of clothing worn by the robber." Gray did not include this argument in his appellate brief, so we will not discuss it further. *See Cosio v. Medical Coll. of Wis., Inc.*, 139 Wis. 2d 241, 242-43, 407 N.W.2d 302 (Ct. App. 1987) (arguments not briefed on appeal are deemed abandoned).

weigh and sift conflicting testimony and give weight to those nonverbal attributes of the witnesses which are often persuasive indicia of guilt or innocence").

¶39    We apply similar reasoning to Gray's argument that the prosecutor improperly appealed to the jurors' emotions with his remarks regarding C.T.'s experience, the potential experience of a new driver caught in the middle of a high-speed chase, and our responsibility as a society to condemn this type of behavior. Again, the jury was properly instructed to "not be swayed by sympathy, prejudice, or passion." In fact, this court has previously held that this instruction helps to mitigate the harm from a prosecutor's improper statement during closing arguments. *See State v. DeLain*, 2004 WI App 79, ¶26, 272 Wis. 2d 356, 679 N.W.2d 562.

¶40    For these reasons, any error relating to the prosecutor's allegedly improper statements during closing arguments was harmless. Therefore, Gray is not entitled to a new trial or other relief as a result of any error.

## II.    Ineffective Assistant of Counsel Claims

¶41    Turning to Gray's request for an evidentiary hearing relating to his claims of ineffective assistance of counsel, we conclude that it was properly declined by the trial court. A claim of ineffective representation requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 309, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. If, on the other hand, the postconviction motion "does not raise facts

14

sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court, in its discretion, may either grant or deny a hearing. *Id.*, ¶9.

¶42    To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *Allen*, 274 Wis. 2d 568, ¶26. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶43    Gray's claim that his trial counsel was ineffective for failing to object to the comments by the prosecutor is defeated under the same reasoning as his claim that those comments were improper. Our conclusion that any error by the prosecutor was harmless because the jury would have found Gray guilty absent the error means that Gray was not prejudiced by his trial counsel's failure to object to the prosecutor's comments. *See State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62 ("To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (citations and one set of quotation marks omitted)). In other words, there is not a reasonable probability that the outcome of the trial would have been different, and therefore this claim of ineffective assistance of counsel fails.

15

¶44    Gray's claim of effective assistance relating to trial counsel's failure to procure the inclusion of WIS JI—CRIMINAL 180, the jury instruction regarding the absence of a recording of Gray's custodial interview, fails for the same reason. While the jury was not specifically instructed about considering the absence of the recording, it had been instructed that it was to weigh the credibility of the witnesses. This included Detective Keck, who testified that he had inadvertently failed to record the interview.[4]  For that reason, even if the failure to include WIS JI—CRIMINAL 180 was the result of deficient performance on the part of trial counsel, it does not undermine our confidence in the outcome of the trial.  Therefore, Gray has not established that he was prejudiced by this alleged error.  *See Love*, 284 Wis. 2d 111, ¶30.

¶45    Finally, Gray's claim that his trial counsel was ineffective for failing to inform the trial court of the amount of time he was serving on a revocation sentence in Sheboygan County fails for similar reasons.  Even if this was deemed to be a deficiency, the trial court stated that this information would not have affected the sentence it imposed due to the "egregiousness of the offenses."  The evidence set forth in the record supports this statement.  Therefore, Gray has not shown that the outcome of his sentencing was affected by the purported error, and thus this claim also fails due to a lack of prejudice.  *See id.*

¶46    In sum, the record conclusively demonstrates that Gray is not entitled to relief.  As such, the trial court properly denied his postconviction motion without

---

[4] Furthermore, pursuant to WIS. STAT. § 972.115(2)(a)3. (2017-18), an instruction is not necessary if law enforcement in good faith failed to make the recording due to mistake or equipment failure.  The trial court referenced this statute, but did not make any findings regarding the same.  However, we note that the record indicates that this exception appears to apply in this case.

an evidentiary hearing.  *See **Allen***, 274 Wis. 2d 568, ¶9.  Accordingly, we affirm Gray's judgment of conviction and the order denying his postconviction motion.

  *By the Court.*—Judgment and order affirmed.

  This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).