COURT OF APPEALS
DECISION
DATED AND FILED

February 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1518-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF256

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JAVA I. ORR,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed.*

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Java I. Orr appeals from a judgment convicting him of multiple offenses of domestic abuse and an order denying his postconviction motion.  Orr raises multiple issues on appeal, alleging as grounds for relief various incidents of prosecutorial misconduct, ineffective assistance of trial counsel, and erroneous exercises of discretion by the circuit court.  As we explain below, we conclude that Orr is not entitled to a new trial, a new restitution hearing, resentencing, or reversal as to any issue.  Accordingly, we affirm.

## BACKGROUND

¶2      Orr was charged with battery and other related offenses of domestic abuse after he physically attacked Hailey, in whose apartment he lived.[1]  At a jury trial, Hailey testified to the events charged in the Criminal Complaint.  Hailey told the jury that Orr had beaten her with her own laptop computer, a vacuum cleaner, and a box fan.  Hailey testified that after Orr beat her, she wandered outside and found her neighbor, Jessica, who called 911.  The police responded.  Hailey reported to the officers what happened and was then hospitalized as a result of the beating.

¶3      The jury found Orr guilty of two counts of bail jumping, two counts of battery, two counts of disorderly conduct, and one count of criminal damage to property, all as a domestic abuse repeater.  The jury acquitted Orr of six additional counts alleging that he harassed and threatened Hailey by telephone in the days after the beating.  The circuit court sentenced Orr to a total of eight years of initial

---

[1] As do the parties in briefing, we use the pseudonym "Hailey" to refer to the victim. *See* WIS. STAT. Rule 809.19(1)(g) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

confinement and four years of extended supervision, with domestic abuse repeater enhancers applicable to all counts. A restitution hearing was held and an order entered, though the court subsequently amended the restitution order to relieve Orr from paying for the broken vacuum cleaner about which Hailey testified.

¶4 Orr filed a postconviction motion raising numerous issues related to trial, sentencing, and restitution. He first argued that the prosecutor committed misconduct by vouching for Hailey's credibility and by allowing perjured testimony. Orr further argued that the circuit court erroneously exercised its discretion in admitting other-acts evidence, that his trial counsel was ineffective, and that he was entitled to a new trial in the interest of justice. Regarding sentencing, Orr argued that the domestic abuse repeater enhancer was inapplicable to him because he did not have the requisite prior convictions. In any event, Orr claimed the enhancer can never be applied to a bail-jumping conviction because the government is the only victim of that crime. Finally, Orr sought a new restitution hearing on the basis of ineffective assistance of counsel at that hearing.

¶5 After conducting a postconviction hearing at which both Orr and trial counsel testified, the circuit court denied all of Orr's claims. The court did, however, remove the cost of the vacuum cleaner from the restitution order after a review of the trial testimony confirmed that Hailey testified that Orr did not break the vacuum when he hit her with it. Orr appeals.

¶6 We incorporate additional facts into our discussion below as needed.

**DISCUSSION**

¶7 On appeal, Orr raises the same issues as in his postconviction motion. Specifically, he advances all the following arguments: (1) there was

3

prosecutorial misconduct at trial that rose to the level of plain error, requiring reversal; (2) the circuit court erroneously exercised its discretion in admitting other-acts evidence of Orr's most recent prior domestic batteries; (3) Orr's trial counsel was ineffective at challenging Hailey's credibility; (4) Orr is entitled to a new trial in the interest of justice; (5) the court improperly applied the domestic abuse repeater enhancer to Orr's sentences because his two prior domestic abuse convictions were entered on the same day; (6) the court improperly applied the domestic abuse repeater enhancer to Orr's bail-jumping convictions; and (7) Orr is entitled to a new restitution hearing due to ineffective assistance of counsel at the restitution hearing. We address every issue in turn below, explaining why we affirm the circuit court as to each.

## I. Plain Error due to Prosecutorial Misconduct

¶8 Orr first argues he is entitled to a new trial because the prosecutor violated his due process rights. Orr raises challenges to two acts of the prosecutor: (1) offering an opinion as to Hailey's credibility in closing argument; and (2) knowingly presenting perjured testimony. Because Orr neither objected to the prosecutor's comments nor moved for a mistrial, he concedes he forfeited these challenges. *See State v. Saunders*, 2011 WI App 156, ¶29 & n.5, 338 Wis. 2d 160, 807 N.W.2d 679. Orr argues that he is nonetheless entitled to a new trial because the prosecutor's statements and actions amounted to plain error. We disagree.

¶9 The plain error doctrine allows appellate courts to review errors that were forfeited by a party's failure to object or otherwise preserve the error for review as a matter of right. *See* WIS. STAT. § 901.03(4); *State v. Mayo*, 2007 WI 78, ¶¶28-29, 301 Wis. 2d 642, 734 N.W.2d 115. Wisconsin courts have not

articulated a "bright-line rule" or "hard and fast classification" for the types of errors that constitute plain errors. *Id.*, ¶29 (citation omitted). Instead, "'the existence of plain error will turn on the facts of the particular case.'" *State v. Jorgensen*, 2008 WI 60, ¶22, 310 Wis. 2d 138, 754 N.W.2d 77 (quoting *Mayo*, 301 Wis. 2d 642, ¶29). The plain error doctrine should be applied "sparingly" and only when the defendant meets its burden of showing the error is "fundamental, obvious, and substantial[.]" *Jorgensen*, 310 Wis. 2d 138, ¶¶21, 23. If the defendant makes such a showing, the burden shifts to the State to show that the error is harmless. *Id.* We independently review the Record to determine whether there has been plain error warranting a new trial. *State v. Nelson*, 2021 WI App 2, ¶46, 395 Wis. 2d 585, 954 N.W.2d 11 (2020).

¶10 Orr's first prosecutorial misconduct claim is that the prosecutor improperly vouched for Hailey's credibility during closing argument. Improper vouching occurs only when the prosecutor expresses a "personal opinion about the truthfulness of a witness or when she implies that facts not before the jury lend a witness credibility." *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000). During closing argument, a prosecutor is entitled to "comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors." *State v. Adams*, 221 Wis. 2d 1, 19, 584 N.W.2d 695 (Ct. App. 1998). Further, "a prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented." *Id.* at 17.

¶11 After review of the trial transcripts, we conclude that any comments the prosecutor made on Hailey's credibility were not improper vouching because they were permissible arguments based on the evidence presented. While Orr primarily highlights fragments of the transcripts that may resemble vouching if

viewed in isolation, we conclude that, when viewed in context, any comments on Hailey's credibility were permissible arguments based on the evidence presented.

¶12 During closing argument here, the prosecutor began by explicitly telling the jury it should do "nothing more than follow the evidence." The prosecutor then went over the trial evidence, emphasizing in particular the destroyed laptop that was found hidden in the couch. The prosecutor also discussed Hailey's hospitalization and her documented injuries—all of which were consistent with Hailey's story and inconsistent with Orr's defense. It was on the basis of this supporting evidence, which had just been discussed, that the prosecutor asked the jury to conclude that Hailey's credibility was "very sound" and that she was telling the truth. There was no improper vouching by the prosecutor. *See id.* at 19.

¶13 Orr next argues that the prosecutor knowingly allowed perjured testimony because Hailey testified that Orr caused her to have a concussion, but the medical records showed no concussion. However, Orr has not shown that Hailey's testimony was perjured, and even if it was, any possible misinformation was fully corrected during the trial. Moreover, contrary to Orr's accusation of perjury, the evidence showed that Hailey genuinely believed she had a concussion. She had suffered a concussion before the night in question, and Orr's abuse on that night caused her to feel similar symptoms such as headaches, dizziness, and nausea. Hailey's medical history and symptoms led her to believe that she was again experiencing a concussion. Further, as noted at the postconviction hearing, Hailey's medical records indicated she had previously suffered a concussion. It is possible that Hailey simply misread this portion of the report rather than knowingly perjuring herself.

¶14 Moreover, even assuming, without deciding, that it was erroneous to elicit Hailey's testimony that Orr gave her a concussion, the alleged error was harmless beyond a reasonable doubt because any possible misinformation was fully corrected when the jury was presented with Hailey's medical records related to the charges. Plain error claims are subject to harmless error analysis. *Jorgensen*, 310 Wis. 2d 138, ¶23. Here, as Orr concedes, a police officer informed the jury that Hailey's medical records did not say she had a concussion. Thus, it is undisputed that the jury heard what the evidence showed, namely, that while Hailey testified she had a concussion based on her symptoms and prior experience, the medical records did not substantiate that belief. In sum, Orr is not entitled to relief on his plain error claims.

## II. Admission of Other-Acts Evidence

¶15 Orr next argues that the circuit court erroneously exercised its discretion in admitting at trial evidence of Orr's prior domestic abuse convictions. He asserts that "the convictions lacked any relevance and unfairly prejudiced Orr."

¶16 Other-acts evidence is properly admissible if: it is offered for a permissible purpose, pursuant to WIS. STAT. § 904.04(2); it is relevant under the two requirements of WIS. STAT. § 904.01; and its probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03. *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). "Unfair prejudice" does not mean mere damage to a party's cause but "a tendency to influence the outcome by improper means." *Christensen v. Economy Fire & Cas. Co.*, 77 Wis. 2d 50, 61-62, 252 N.W.2d 81 (1977).

¶17 WISCONSIN STAT. § 904.04(2)(b)1 governs the admissibility of other-acts offenses in situations including those alleging serious sex offenses and

7

domestic abuse. It provides that "evidence of any similar acts by the accused is admissible … without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act." *Id.* Determining whether the evidence of Orr's other acts was properly admitted under § 904.04(2)(b)1 requires us to review an exercise of discretion by the circuit court. *See State v. Jackson*, 2014 WI 4, ¶43, 352 Wis. 2d 249, 841 N.W.2d 791 ("This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion." (citation omitted)). "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *Id.* (citation omitted).

¶18 We conclude here that the circuit court did not erroneously exercise its discretion in allowing evidence of Orr's other acts of domestic abuse. First, as Orr concedes, the evidence was offered for a permissible purpose of supporting Hailey's credibility. The evidence added context to several statements Orr made to Hailey, and it explained why Hailey felt so threatened by these statements.

¶19 In addition, the evidence meets the low bar for relevance. As Hailey explained at trial, a main reason she interpreted Orr's statements as threats is that Orr had said he would do to her what he had done to his child's mother. Introducing the prior convictions told the jury exactly what Orr had done to his child's mother—he had committed battery against her by striking her twice. The fact that Orr was convicted of this offense tends to support Hailey's credibility by showing that her fears were reasonable, thereby making it relevant to the jury's ultimate determinations.

8

¶20   Moreover, Orr presents nothing on which we could overturn the circuit court's conclusion that the evidence's probative value was not substantially outweighed by its risk of unfair prejudice. As Orr acknowledged and we have noted, Hailey's credibility was crucial to the jury's decision-making. Orr's convictions for battery against his child's mother strongly supported Hailey's credibility by giving context to Hailey's statement about Orr's threats and showing she was not simply making up his prior acts. The extreme fear Hailey expressed, which even caused her to flee the state, seems more reasonable when placed in this context. Additionally, the jury was given no more than the bare facts of the prior case by a police officer who merely reviewed the complaint, which was less prejudicial than calling the prior victim to the stand to provide the intimate details of the other acts.

¶21   Finally, we observe that the jury was explicitly instructed that it could consider the evidence of Orr's prior acts and convictions only as to the issue of Hailey's credibility and that it may not consider the other-acts evidence as character or propensity evidence. We "presume that jurors follow the instructions given by the [circuit] court" and conclude that the limiting instruction given to the jury here was sufficient. *See State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158.

¶22   For all these reasons, we conclude the circuit court did not erroneously exercise its discretion when it admitted evidence of Orr's prior domestic violence convictions, particularly in light of the greater latitude rule. *See Sullivan*, 216 Wis. 2d at 771-73.

### III.   Ineffective assistance of counsel

¶23   Orr next asserts that his trial counsel performed deficiently in two ways.   First, his counsel failed to impeach Hailey's testimony about her concussion with the medical records.   Second, Orr argues his counsel should have introduced an alleged Zelle[2] transaction note from Hailey to Orr, in which Hailey allegedly admitted to lying about the assaults.

¶24   To prevail on an ineffective assistance of counsel claim, the defendant must prove: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.   *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89.   We need not address both components of this inquiry if the defendant does not make a sufficient showing on one.   *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

¶25   To demonstrate deficient performance, the defendant must show that his attorney made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.   *State v. Savage*, 2020 WI 93, ¶28, 395 Wis. 2d 1, 951 N.W.2d 838.   Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different.   *Id.*, ¶32.

¶26   Here, we need not address the prejudice prong because Orr fails to persuade us that his trial counsel performed deficiently in either of the ways he claims.   First, regarding the impeachment claim, our review of the Record shows

---

[2] Zelle is a banking platform that allows people to "[s]end money to friends and family quickly, even if they bank somewhere different[.]"  ZELLE, https://www.zelle.com (last visited Dec. 23, 2025).

that counsel in fact did impeach Hailey's testimony using the medical records. On cross-examination, in response to targeted questioning by Orr's trial counsel, a police officer explained that the medical records actually did not say that Hailey had a concussion. Thus, counsel gave the jury exactly the information Orr says was critical; this testimony certainly highlighted inconsistencies in Hailey's version of events.

¶27 Further, Orr provides no legal authority to support the conclusion that the timing of the impeachment evidence and the witness it came in through are essential to the deficiency analysis here. In other words, although he argues that counsel missed a "pivotal moment" to attack Hailey's credibility, Orr fails to explain why the timing of the impeachment matters in this case.

¶28 We similarly conclude that Orr has not shown deficient performance regarding the alleged Zelle transfer note. Orr claims Hailey allegedly transferred $100 to Orr with the note, "I love you. I'm sorry I lied and put you through all this. I know I have to stop lie so much." He argues that counsel was ineffective in failing to put the alleged note into evidence. But as trial counsel explained at the postconviction hearing, the only way he could have authenticated this document for admission at trial was through Orr, and Orr exercised his right not to testify.

¶29 Orr now also argues his counsel could have called a "bank employee" to "verify the account." However, Orr has failed to point to any evidence that the note was sent by Hailey or that a "bank employee" would have been able to testify to that effect. It is the defendant's burden to prove deficient performance, and Orr has not done so here. *See Strickland*, 466 U.S. at 687.

### IV.    New trial in the interests of justice

¶30    Orr argues that, even if we do not reverse the circuit court on any of the issues discussed to this point, this court should exercise its discretion to grant him a new trial in the interests of justice because the real controversy was not tried. He contends that "improper evidence (prior convictions), prosecutorial vouching, and perjured testimony … prevented the real controversy from being fully tried and justify a new trial in the interests of justice." *See State v. Hicks*, 202 Wis. 2d 150, 159-60, 549 N.W.2d 435 (1996) ("a new trial may be ordered ... whenever the real controversy has not been fully tried[.]"); *see also* WIS. STAT. § 751.06. We reject his claim. As already explained, Orr is not entitled to reversal or a new trial for the specific reasons he raised, and nothing before us indicates that the real controversy was not fully tried or that a new trial is warranted.

### V.    Application of domestic abuse enhancer based on prior convictions

¶31    Under WIS. STAT. § 939.621, a defendant qualifies as a "domestic abuse repeater" if he or she "was convicted on 2 or more separate occasions" of certain crimes involving domestic abuse during the ten-year period preceding the commission of an offense. *See* § 939.621(1)(b). Orr argues that the circuit court erred in its interpretation of the phrase "was convicted on 2 or more separate occasions" in applying the domestic abuse repeater to him. Specifically, Orr asserts that because he was convicted of two prior domestic abuse offenses that arose out of the same incident and had a single offense date, he did not qualify as a repeater at the time of sentencing here. Orr argues that we should interpret this phrase to mean that the defendant's prior convictions for domestic abuse offenses must arise out of two separate incidents; in other words, there must be two separate dates of offense.

¶32    We recently decided this issue in *State v. Ricketts, Jr.*, 2026 WI App 4, ¶1, ___ Wis. 2d ___, ___ N.W.2d ___.  In *Ricketts*, we explicitly rejected the argument that Orr now advances, holding as follows:

> [W]e conclude that for purposes of the domestic abuse repeater statute, a defendant "was convicted on 2 or more separate occasions" as long as he or she was convicted of two qualifying domestic abuse offenses during the requisite statutory time period, regardless of whether those convictions arose out of the same incident, had the same offense date, or occurred during the same [circuit] court appearance.

*Id.*, ¶3.  It is undisputed that Orr was convicted of two domestic batteries within ten years of his convictions here.  Accordingly, the circuit court correctly applied the domestic abuse repeater enhancers.

## VI.    Application of domestic abuse enhancer to bail-jumping convictions

¶33    As noted above, the domestic abuse repeater enhancer applies when a person commits an act of domestic abuse that constitutes the commission of a crime.  WIS. STAT. § 939.621(2).  It further provides that the victim of that domestic abuse crime need not be the same victim as in the incident that led to the prior arrest.  *Id.*  Notwithstanding these facts, Orr argues on appeal that the circuit court erred in applying the domestic abuse repeater enhancer to the bail-jumping conviction.

¶34    Orr's argument as to this issue is that a domestic abuse crime requires a victim, but only the government can be a victim of his bail jumping.  However, Orr's argument is wholly unsupported by governing legal authority.  In fact, as the State observes in briefing, this court has previously held that an individual—in that case, the defendant's mother—may be a victim of the crime of bail jumping.  *See State v. Agosto*, 2008 WI App 149, ¶8, 314 Wis. 2d 385, 760

13

N.W.2d 415. As such, there was no error committed by the circuit court in this regard.

## VII. Request for a new restitution hearing

¶35 Finally, Orr argues that the circuit court should have also ordered an entirely new restitution hearing. At trial, Hailey testified that the vacuum cleaner did not break when Orr hit her with it, but testified slightly differently at the restitution hearing. However, because defense counsel had not yet reviewed the trial transcripts at the time of the restitution hearing, counsel did not impeach Hailey on this topic at the restitution hearing. The court concluded that trial counsel had performed deficiently at the restitution hearing. Consequently, the court removed the cost of the vacuum cleaner from the restitution order.

¶36 On appeal, Orr argues that the remedy structured by the circuit court was not sufficient. He requests a new restitution hearing. He claims that Hailey's testimony about the vacuum cleaner at the restitution hearing "contradicted" her trial testimony, which impacted her credibility on all the other restitution costs. We reject this claim. Our review of the Record shows that Hailey's testimony about the vacuum cleaner at the restitution hearing was not glaringly inconsistent with her trial testimony. She maintained, consistent with her trial testimony, that the hose came out of the vacuum when Orr beat her with it. While she did discuss at the restitution hearing damage that she did not mention at trial; these inconsistencies are not significant enough to infect her testimony, and did not damage her overall credibility significantly.

¶37 In addition, the other parts of the restitution order would not have been affected by Hailey's purportedly inconsistent testimony because the value of the other restitution items was largely corroborated by other evidence. For

example, there were records showing $1,155 in Cash App payments, along with Hailey's contemporaneous emails to the police about them. Similarly, there was no question that Hailey's laptop was broken, and Orr was actually convicted of criminal damage to property for breaking it. Finally, Hailey provided testimony about damage to a box fan and a broom that was consistent with her trial testimony.

¶38 In sum, while there is no doubt that counsel performed deficiently at Orr's restitution hearing by failing to use Hailey's trial testimony to impeach her, there also is no doubt that the circuit court properly remedied the deficient performance by removing the amount allotted for vacuum cleaner repair from the restitution order. Accordingly, the court correctly concluded that Orr suffered no prejudice from counsel's performance beyond the amount of the vacuum cleaner itself.

## CONCLUSION

¶39 For the foregoing reasons, we affirm the judgment and order of the circuit court. Orr has not shown error warranting reversal as to any issue he raises on appeal.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.